SOUTHERN PACKAGE CORPORATION *v.* STATE TAX COMMISSION.

(In Banc. Jan. 24, 1944. Suggestion of Error Overruled ·Feb. 28, 1944.)

[15 So. (2d) 436. No. 35521.]

(In Banc.   Feb. 28, 1944.)

[16 So. (2d) 856.   No. 35521.]

866

Watkins & Eager, of Jackson, and W. S. Henley, of Hazlehurst, for appellant.

868

**J. H. Sumrall,** of Jackson, for appellee.

Argued orally by **W. H. Watkins**, for appellant, and by **J. H. Sumrall**, for appellée.

**Griffith, J.**, delivered the opinion of the court.

During the year 1930 eight industrial concerns located in this state and engaged in the business of manufacturing fruit and vegetable boxes or crates decided to consolidate their plants and assets into one new corporation, and they entered into a consolidation agreement to that effect. The plants and all their property and assets were to be conveyed to the new corporation in consideration of

Common and of Class A Preferred Stock, except timber assets, but for timber owned by the several consolidating concerns and conveyed to the new corporation, that particular property was to be evidenced by Class B Preferred Stock. The consolidated agreement on the subject of the timber was in the following terms:

"Class 'B' Preferred Stock shall be authorized to the extent of five thousand shares of par value of $100.00 each, to be used from time to time, in the purchase of timber, is to be cumulative non-voting to receive dividends at the annual rate of 6%, to be payable annually, and to be preferred over all other stock as to all of the timber holdings, including the real estate on which the timber is situated, and to carry the usual provisions, including the provision that said stock may be retired at any time by the payment of $100.00 per share for each share of the par value of $100.00, or, in other words, said stock may be retired without the payment of any premium whatever, except accrued dividends. A retirement fund shall be set aside in a separate bank account at the end of each month, in amounts equal to the value of timber cut during the previous months, based on the value of timber at the time of purchase. This class of Capital Stock shall be in serial numbers, starting with number one and when the retirement fund is sufficient to retire one or more shares of this Capital Stock, the New Company shall call for retirement at par value of said shares of this stock, commencing with number one (1) and following until the retirement fund is exhausted from time to time."

In pursuance of the consolidation agreement, appellant corporation was organized under the laws of Delaware; the charter carried express provisions as to the issuance of the three classes of stock mentioned, including particularly the authority for the issuance of the Class B Preferred Stock, and this in accordance with the terms of the above quoted timber stipulation. Timber in the estimated value of $500,000 was conveyed to the corporation, and the owners received Class B Preferred Stock

therefor, the stock certificates being also in accord with the agreed plan above quoted. This stock was set up on the books as a part of its capital, and is so shown on its annual returns made for the franchise tax.

Appellant corporation contends now however, that said Class B Preferred Stock is in substance a mere evidence of indebtedness, creating between the corporation and the holders of this particular stock the relation of debtor and creditor, and that therefore it should not be included in the computations of the franchise tax.

Corporations enjoy privileges and immunities not possessed by natural persons, and for the security and protection, by its laws and authority, of such privileges and immunities, the state, for revenue and as a quid pro quo, may levy upon corporations which carry on any substantial part of their business activities in the state, an exaction called a franchise tax. The amount of the franchise tax and the mode of the measurement thereof are matters which rest within legislative discretion, when not burdensome or oppressive and when solely for revenue. The usual mode of measurement is to look to the amount of the capital of the corporation employed or so situated as to be privileged to be employed in the state, and in determining the amount of the capital, the total of the capital stock, stated surplus, and undivided profits of the corporation is used prima facie as a determinative factor. Such, as to the features mentioned, is our Franchise Tax Law, Chapter 121, Laws 1934.

The capital of a corporation is its tangibles, the aggregate of its property and assets of all kinds, while its capital stock is the evidence of rights in such property. As has been stated, timber to the estimated value of $500,000 was conveyed to the corporation, so that the corporation thereupon and thereafter had entire dominion and control over said timber and the full right to use or employ said timber as assets in the business of the corporation. Class B Preferred Stock was issued to those who conveyed the timber to the corporation, wherefore the stock thus

issued represented the timber so conveyed. Section 3 of the Act in question levied a franchise or excise tax on foreign corporations "equal to $1.00 of each $1,000.00 or fraction thereon of the value of capital used, invested or employed within this state, except as hereinafter provided." Of the capital used or invested or employed by the corporation was and is this $500,000 worth of timber, and when we turn to Sections 6, 7, and 8 of the Act it is seen that the capital stock, surplus, etc., is looked to simply as a convenient form of the evidence prima facie of the "value of capital used, invested or employed within this state." It is immaterial, therefore, what name or characteristic the particular capital stock which represented this timber may have or what rights it confers inter sese—it is enough, so far as the franchise tax is concerned, that it represents or evidences capital used, invested, or employed within this state, and it is undisputed that all the capital timber which this stock represents is situated within this state.

Appellant's second contention arises out of the fact that a considerable portion of its products is sold by executive officers in sales transactions wholly begun and concluded outside this state and to nonresident buyers. It is noted that under Section 8 the calculations of the franchise tax on foreign corporations is to be based on the ratio which (a) The real estate and taxable personal property owned or used in this state, and (b) the gross receipts from business carried on in this state, bears to (c) the total real estate and tangible personal property of the corporation and (d) gross receipts, wherever located and from wherever received.

Appellant's contention is that as to (b) there is to be included only receipts from sales begun and terminated in this state, and which would exclude receipts from sales made in interstate commerce. The effect of this contention, if sustained, would work a substantial reduction in the tax total and in partial proportion to the amounts represented by such sales in interstate com-

merce. If, then, a foreign corporation had all its capital invested in twenty factories located and operating in this state, producing hundreds of thousands of dollars of goods a year and the total output was sold through and only through an executive sales agent whose office is in another state and the sales were all to buyers in other states, no franchise tax would be due here, insofar as "the gross receipts from business carried on in this state" would be thus availed of incidentally to displace it. The contention, by its technical extremity, disproves itself. What is meant by the language of the statute under (b) is receipts from that which is actually done or carried on in this state—and not as to where the sales of the products were made or to whom. What here was sold was that which was produced in this state by a business carried on in this state, and the franchise tax is for the corporate privilege or franchise of doing in this state what was done and is being done here regardless of the ultimate destination of the products or by what legalistic means they may get there. Compare Stone v. Interstate N. Gas Company (5 Cir.), 103 F. (2d) 544.

Affirmed.

### On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

Appellants re-argue the contention that the Class B Preferred Stock, issued to those who conveyed timber to it, is merely an evidence of indebtedness. Support for that view is not wanting. As stated in the original opinion, however, the total of the capital stock, stated surplus, and undivided profits of the corporation is used prima facie as a determinative factor. Even conceding, for the sake of discussion, but not deciding, that such stock created a mere relation of debtor and creditor, the prima facie effect of its listing as capital stock is not overcome by any showing as to the actual value of its

tangible assets as represented by the actual timber yet so held. A resort to assumption or judicial notice, if invoked, could conceivably reveal a substantial equity in such timber. We do not explore this point, but rest our decision upon the prima facie effect of its return for franchise tax

PARTIALLY DISSENTING OPINION.

**Smith, C. J.,** delivered a partially dissenting opinion.

This Class B Preferred Stock issued by this corporation is, in my judgment, capital stock, and I think the court should now definitely so say, and not cast a doubt on its being such, as I fear its opinion on this suggestion of error does, thereby inviting other lawsuits growing out of a contention that this character of corporate stock is not in fact capital stock but merely evidences in indebtedness due by the corporation issuing it.