MISSISSIPPI STATE TAX COMMISSION *v.* TENNESSEE GAS TRANSMISSION CO.

No. 41264 December 14, 1959 116 So. 2d 550

*John E. Stone,* Jackson, for appellant.

*Wynn, Hafter, Lake & Tindall,* Greenville; *John Brendel,* Houston, Texas, for appellee.

ETHRIDGE, J.

The case involves the validity of an apportionment formula of a state franchise tax upon a multistate corporation, measured by an allocation to Mississippi of capital used, invested or employed within the state. The chancery court held the statutory formula was void because in violation of the interstate commerce and due process clauses of the United States Constitution. However, we conclude that the statute is a valid exercise of the State's taxing power.

### I.

The corporate franchise tax was originally enacted in 1934. Miss. Laws 1934, Chapter 121; Miss. Laws 1940, Chapter 115. Its amount was increased in 1955. Miss. Laws 1955, Ex. Sess., Chapter 118. In 1956 the Legislature substantially rewrote the franchise tax act. Miss. Laws 1956, Chapter 412. The provision under attack here was enacted in that year as Section 4, and is Miss. Code 1942, Recompiled, Section 9319:

"Multistate corporations.

"In the case of organizations doing business both within and without Mississippi, the value of the capital employed in this state shall be determined by first computing the ratio between (1) the real and tangible personal property owned or used in Mississippi and gross receipts from business carried on in Mississippi and (2) the total real and tangible personal property and gross receipts wherever located and from wherever received. Said ratio then shall be applied to the total capital stock, surplus, undivided profits and true reserves and the result of that application shall be the capital employed in this state. Provided, however, that the amount of the determined capital in Mississippi shall in no case be less than the assessed value of the property of the organization for the year preceding the year in which the return is due.

"For the purpose of this section, an organization which uses a formula method of apportionment in making income tax returns to this state shall determine its gross receipts from business carried on in Mississippi by applying to total unitary receipts the ratio achieved, or which would be achieved, by such formula and adding to the result of such application any nonunitary Mississippi receipts."

The tax is levied on both domestic corporations, Code Section 9313, and foreign corporations, Code Section 9314. It is measured by "the value of the capital used, invested or employed within this state." Section 9314.

■ ■ The local incident, taxable basis or subject of the tax is "the benefit and protection of the government and laws of the state" received by the taxpayer, and as an exaction and recompense for protection of the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of an interstate pipeline. Accordingly, the incident selected does not lend itself to repeated exactions in other states. And it is not discriminatory, when properly apportioned to the capital used, invested or employed in Mississippi. Stone v. Interstate Natural Gas Co., 103 Fed. 2d 544 (C. C. A. 5th 1939), affirmed per curiam in 308 U. S. 522, 60 S. Ct. 292, 84 L. Ed. 442 (1939), following Southern Natural Gas Corp. v. Alabama, 301 U. S. 148, 57 S. Ct. 696, 81 L. Ed. 970, (1936); Stone v. Memphis Natural Gas Co., 201 Miss. 670, 29 So. 2d 268 (1947), affirmed in Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 68 S. Ct. 1475, 92 L. Ed. 1832 (1947); Southern Package Corporation v. State Tax Commission, 195 Miss. 864, 15 So. 2d 436 (1944); see also State Tax Commission v. Memphis Natural Gas Co., 197 Miss. 583, 19 So. 2d 477 (1944), appeal dismissed in 323 U. S. 682, 65 S. Ct. 440, 89 L. Ed. 553, (apportioned net income tax on interstate gas pipeline company).

■ ■ Since appellee, Tennessee Gas Transmission Company, contends that Section 9319 is unconstitutional, certain established principles of judicial review should be noted. In determining the constitutionality of a statute, the courts should proceed with the greatest possible caution, and should never declare it void unless invalidity is established beyond a reasonable doubt. They should adopt a construction which will bring the act into harmony with the Constitution, whenever necessary in order to uphold its constitutionality and to carry its provisions into effect. ■ ■ Every intendment is in favor of constitutionality, unless its repugnancy to that document clearly appears. The presumption is in favor of its validity. ■ ■ The propriety, wisdom and expediency

of the act is a question for the Legislature and not the courts. It will be presumed that the Legislature considered the effect of the statute, and that it acted with an intent to comply with constitutional provisions and a desire to be fair and equitable. Russell Investment Corp. v. Russell, 182 Miss. 385, 419, 178 So. 815, 182 So. 102 (1938).

These same principles are uniformly applied to judicial review of a legislative apportionment formula for the assessment of a tax. Recently in Stapling Machines Company v. Monaghan, 232 Miss. 484, 99 So. 2d 649, 101 So. 2d 359 (1958), this Court reiterated them. The company, engaged in interstate and intrastate commerce, sued to recover income tax. The Commission used an apportionment formula which was affirmed by this Court, stating: "In the case of Butler Bros. v. McColgan, the Supreme Court of the United States in 315 U. S. 501-510, 62 S. Ct. 701-705, 86 L. Ed. 991-997, held that one who attacks a formula of apportionment carries a distinct burden of showing by clear and cogent evidence that it results in extraterritorial values being taxed, and in the same case the Supreme Court of the United States discussed at length the question of the correct apportionment formula and held that if the statute as calling for a method of allocation which is fairly calculated to assign to California that part of the net income reasonably attributable to the business done there, any constitutional question arising from the Fourteenth Amendment is at an end."

This Court again followed the authoritative statement of Butler Brothers v. McColgan, in McWilliams Dredging Company v. McKeigney, 227 Miss. 730, 86 So. 2d 672, 677, 678 (1956).

51 Am. Jur., Taxation, Sections 862-863, comments as follows about apportionment of state franchise taxes: ". . . it appears to be well established that such a tax is not invalid where it is imposed upon or measured by only the business of the taxpayer transacted within the

state, by means of some reasonable formula for apportioning the exaction to such business." See also 84 C. J. S., Taxation, Section 453.

In short, the issue is whether appellee sufficiently met its "distinct burden of showing by clear and cogent evidence that it (the Mississippi franchise tax measured by the apportionment formula of Section 9319) results in extraterritorial values being taxed." We do not think appellee met that burden of proof. On the contrary, the statute calls for a method of allocation of capital employed in Mississippi which is fairly calculated to assign to Mississippi its just proportion.

## II.

Tennessee Gas Transmission Company is incorporated under the laws of the State of Delaware. Its principal office and place of business is Houston, Texas. It and its predecessor have been qualified to do business in Mississippi since July 1947. Appellee's books and records are kept in its home office in Houston, and all contracts entered into by appellee are executed in Houston. Appellee owns and operates through the State of Mississippi natural gas transmission pipelines, through which it transmits natural gas gathered in the States of Texas and Louisiana through the States of Arkansas, Mississippi and Tennessee and on into destinations in northern states.

Appellee maintains in Mississippi natural gas transmission pipelines. In connection with them it has compressor and meter stations. It maintains employees in Mississippi. During the two franchise tax years in question in this case, 1956 and 1957, appellee owned and operated approximately 925 miles of pipelines within the State of Mississippi. It also has in this State four compressor stations and eighteen meter stations. During this period it owned and operated in Mississippi approximately 45 automobiles, trucks and trailers. Appellee also owned dwelling houses on its four compressor

station properties used by its operating and maintenance employees.

During the franchise tax years of 1956 and 1957, appellee made no direct retail sales or deliveries of gas in Mississippi, but delivered wholesale quantities of gas in the state. The company has a partial interest in thirteen oil wells in the State, none of which it operates. The gas pipeline transmission system is conducted separately from its oil holdings in Mississippi. The gross revenue from appellee's oil holdings in the state for the two years in question was $66,253.00 and $69,318.00, respectively. Appellee received rental revenue from its dwelling houses on compressor station properties used by its employees in the sum of $6,136 and $7,981 for the tax years for 1956 and 1957. Appellee's pipeline operations are regulated by the Federal Power Commission. Power used to operate the company's gas transmission compressor stations in Mississippi is generated from gas taken from its gas transmission lines in its four pumping stations within the State. Appellee has invoked the statutory grant of eminent domain provided by the laws of Mississippi in the state courts in several eminent domain suits. The company paid to the state and political subdivisions ad valorem taxes. The assessed value of its property in the state for 1956 was $19,115,150 and for 1957, $21,250,000. All of the aforesaid property of the taxpayer received the protection of the laws of the State of Mississippi.

Appellee paid its franchise tax for the years 1956 and 1957, as required by Code Section 9319. It then petitioned for refunds because of an alleged excessive allocation to the State of capital employed herein, as a result of the second paragraph of the statute. The State Tax Commission entered an order affirming the assessments and denied the taxpayer's petition. The company appealed to the Chancery Court, First Judicial District of Hinds County, which reversed the Commission, and directed refunds of the alleged excess amounts

of tax resulting from the apportionment formula as developed in the second paragraph of Section 9319. This appeal is from that decree.

### III.

The tax is computed under the Mississippi statute in the following manner: Code Section 9319 prescribes the formula used in determining what part of a taxpayer's total capital is used, invested or employed within this State. To ascertain this, the total capital stock, surplus, undivided profits and true reserves of the taxpayer is multiplied by a percentage ratio or fraction. The numerator of this ratio is the real and tangible personal property owned or used in Mississippi, plus the gross receipts from business carried on in Mississippi. The denominator is the total real and tangible personal property wherever located, plus the gross receipts wherever located and from wherever received. In other words, this is a two-factor formula. The resulting ratio percentage or fraction is then multiplied by the total capital stock, surplus, undivided profits and true reserve. The result of that application is the capital employed in this State. When that tax base is multiplied by the tax rate of $2 per thousand dollars of capital used, invested or employed in Mississippi, it produces the amount of the franchise tax.

Application of this formula to the 1956 franchise tax of appellee is illustrated as follows:

$$\frac{\$81{,}531{,}070 \text{ (property owned or used in Miss.)} \quad plus \quad \$11{,}204{,}833 \text{ (Miss. gross receipts)}}{\$904{,}030{,}377 \text{ (property wherever located)} \quad plus \quad \$199{,}809{,}756 \text{ (gross receipts wherever located and received)}} = 8.4012\%$$

8.4012% x $263,763,362 = $22,159,288 x $2.00 = $44,320
    (total capital             (tax rate)  (which
    stock, surplus,                   is 1956
    undivided pro-                   tax)
    fits and true
    reserves)

None of these elements of the formula are in dispute *except* the second part of the numerator, "gross receipts from business carried on in Mississippi", which, under the statutory formula, is $11,204,833 for 1956. The taxpayer contends that the formula method of Section 9319 for computing gross receipts from Mississippi business allocates to the State extraterritorial values. Whether it does is the issue in this case.

Prior to the effective date of the 1956 amendment to Section 9319, the apportionment formula was in substance that set forth in the first paragraph of the amended law. However, the former statute did not direct the Legislature as to the method of determining gross receipts from Mississippi business. Hence appellee's returns had assigned as gross receipts from Mississippi business (a) its receipts from wholesale gas deliveries in the State, (b) receipts from oil properties in Mississippi, and (c) rentals from its houses on its compressor station properties. For example, for 1956 this former method of determining gross receipts from Mississippi business would be as follows: receipts from wholesale gas deliveries in Mississippi, $1,324,944; income from oil properties in the State, $66,253; rentals from houses on compressor stations, $6,136; total gross receipts from Mississippi business, $1,397,333. This latter figure is the amount of gross receipts from Mississippi business found by the chancery court for 1956. Appellee took no cross-appeal, and apparently is satisfied with that method of fixing Mississippi gross receipts as a factor in the formula. The trouble with it is that it does not follow the statute.

This former method used by taxpayer in computing this part or .percentage to be used in the apportionment formula, "gross receipts from Mississippi business," was changed by statute in 1956. Miss. Laws 1956, Chapter 412, Section 4; Miss. Code 1942, Recompiled, Section 9319. The second paragraph of the present act provides: "For the purpose of this section, an organization which uses a formula method of apportionment in making income tax returns to this state shall determine its gross receipts from business carried on in Mississippi by applying to total unitary receipts the ratio achieved, or which would be achieved, by such formula and adding to the result of such application any nonunitary Mississippi receipts."

In other words, a taxpayer which uses in its income tax returns a formula method of apportionment, and which is a multistate corporation, must determine its total gross receipts from Mississippi business (a) by applying to its total *unitary* receipts wherever located or received the ratio which would be achieved *by such income tax formula*. The result is the *unitary* Mississippi gross receipts, (b) to this is added any *nonunitary,* wholly local Mississippi receipts.

Unitary gross receipts from Mississippi business, under the statutory formula, are determined by a three-factor sub-formula: (a) The ratio of unitary gross revenue from Mississippi business to unitary gross revenue everywhere; (b) the ratio of real and tangible personal property in Mississippi to real and tangible personal property everywhere; and (c) the ratio of operating nonoffice salaries and wages in Mississippi to operating nonoffice salaries and wages everywhere. The average of these three percentages is then multiplied by appellee's total unitary gross receipts of $160,678,431. The result is $11,132,444, which are the *unitary* gross receipts from Mississippi business. To this figure is added the *nonunitary* gross receipts from Mississippi business, $66,253 (receipts from Mississippi oil properties)

and $6,136 (rentals from compressor station housing), or a total of $72,389.

Unitary Gross Receipts from Miss. business $11,132,444.

Nonunitary Gross Receipts from Miss.
    business         72,389.

Total of unitary and nonunitary gross
    receipts from Mississippi business    $11,204,833.

In short, this is the method of computing the aggregate of unitary and nonunitary gross receipts from Mississippi business. The statutory formula determines this factor in the foregoing manner, and in 1956, for example, the result is $11,204,833. This is the figure determined by the statute to be used in the second part of the numerator of the franchise tax apportionment formula.

Code Section 9319 as amended in 1956 manifestly represents an attempt by the Legislature to incorporate in the franchise tax apportionment formula, *as the subsidiary percentage factor of "gross receipts from business carried on in Mississippi"*, a reasonable and fair allocation to this State of both the *unitary* and *nonunitary* gross receipts attributable to Mississippi. The title to the section states that it pertains to "multistate corporations." The title to the Act, Chapter 412, Miss. Laws 1956, states in part that it is an act "to place all multistate corporations, both domestic and foreign, on the same basis of apportionment." The objective is equality and fairness of apportionment. The second paragraph of Section 9319 simply provides that in determining this subsidiary percentage in the overall formula to be used in determining capital employed in Mississippi, the income tax apportionment formula should be used to determine Mississippi unitary gross receipts. To this is added nonunitary Mississippi gross receipts. Of course the tax is not a tax on apportioned gross receipts. The factor of gross receipts from Mississippi business is only one of several subsidiary percentages used in de-

termining the capital used, invested or employed in this State.

Although appellee observes that this percentage represents an increase of 801% in this single subsidiary factor, the fact is that appellee's franchise tax is increased from the old formula for the year 1956 by only 11.83%, and for the year 1957 by 10.78%.

Appellee offered no evidence which would show that the prior method of computing its gross receipts from Mississippi business was even an approximately adequate determination of that subsidary percentage factor. It offered no evidence to show that the new subsidary percentage determination of gross receipts from Mississippi business taxed extraterritorial values. The mere fact that the three-factor formula for determining *unitary* gross receipts included as subsidiary percentages the percentage of property in the State, to property everywhere, and unitary gross revenue for Mississippi business to unitary gross revenue elsewhere, does not indicate a duplication of tax. The Legislature was warranted in concluding that, in order to determine adequately gross receipts from Mississippi business, it should include both unitary and nonunitary gross receipts in this State; and that a three-factor formula pertaining to gross revenue, property, and nonoffice salaries and wages was a more adequate method than the one formerly used.

## IV.

The Legislature manifestly had in mind the established concept in the law of taxation of a unitary business. It is a term applied to concerns carrying on one kind of business, component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as individual units. Maxwell v. Kent-Coffey Mfg. Co., 204 N. C. 365, 168 S. E. 397, 399, 90 A. L. R. 476 (1933); 43 Words and Phrases (Perm. Ed., 1940), p. 256; 1959 Supp., 100. The test in deter-

mining what is a unitary business is whether all factors are essential to the ultimate realization of gain. The operations conducted in one state benefit and are benefited by the operations conducted in another state. If its various parts are interdependent and of mutual benefit, so as to form one integral part rather than several business entities, it is unitary.

The "unit rule" was originally developed to apportion property for earnings of such unitary enterprises as communication or transportation companies. Paul J. Hartman, in his "State Taxation of Interstate Commerce" (1953), page 245, after discussing apportioned capital stock taxes on such unitary enterprises, which of course would include multistate pipelines, concludes: "Those, of course, are companies whose property does have real intangible value above its physical worth owing to its use as part of one entire enterprise, and whose earnings are incapable of separation into the respective portions derived from intrastate and interstate business. This "unit rule" has thus been extended, wisely it seems, to corporations engaged in production and selling activities. While it may be more difficult to determine what rightfully belongs to a State when a sale is concerned in multistate sales than when the receipts are from multi-state transportation or communication, that does not mean there can be no constitutional allocation of income from multi-state enterprises whose income is derived from interstate sales. The *Beauchamp* and *Evatt* cases show clearly that such an allocation is possible."

The United States Supreme Court has recognized in a number of cases, under the interstate commerce and due process clauses, the validity of an apportioned capital stock, franchise tax. Hartman reviews these decisions, and concludes that the court has recognized the wisdom of this application of the unit rule. Hartman, ibid., pp. 238-246. Two leading cases are Ford Motor Company v. Beauchamp, 308 U. S. 331, 60 S. Ct. 273,

84 L. Ed. 304 (1939), rehearing denied, 308 U. S. 640, 60 S. Ct. 385, 84 L. Ed. 531; and International Harvester Company v. Evatt, 329 U. S. 416, 67 S. Ct. 444, 91 L. Ed. 390 (1936). Hartman analyzes accurately these cases as follows:

"An examination of a few late cases gives a clear picture of the appearance of a full-blown apportioned capital stock franchise tax and its workings in the total scheme of state taxation. *Ford Motor Company v. Beauchamp* not only shows the various factors that may go into the allocation formula, but it also represents an expansion of the idea of the value, to a corporation engaged in interstate commerce, of the privilege of doing local business, beyond the value of the property actually employed within the taxing State. The *Beauchamp* case recognized that the value of the privilege of doing business within the taxing State is increased taxwise by the use of property beyond the State. There, Texas levied an annual franchise tax on every domestic and foreign corporation authorized to do business in the State, measured by a charge upon such proportion of (a) the outstanding capital stock; (b) surplus and undivided profits of the corporation; plus (c) the long-term indebtedness, as the gross receipts from its Texas business bore to its total receipts. The taxpayer, Ford Motor Company, sent parts into Texas for assembly and intrastate sale to dealers. Ford's capital, as defined in the statute, was over $600,000,000. Total gross receipts for the year were over $800,000,000; Texas gross receipts were over $34,000,000. The capital allocable to Texas by the statutory formula was over $23,000,000; and the book value of all assets located in Texas was around $3,-000,000. Payment was made under protest and suit instituted to recover the amount paid on the $20,000,000 in excess of the book value of assets in Texas. The taxpayer contended that the tax was at war with the commerce clause in that it was levied on assets used in interstate business; and that it was offensive to the due

process clause because it taxed activities and property outside the taxing State and over which it had no jurisdiction.

"Over these objections, the Supreme Court sustained the tax, holding that the statutory formula for arriving at the amount of the tax did not violate the Constitution since the measure of the tax simply recognized the increased value of the privilege of doing business within the State resulting from the use of property beyond the State. In short, the Court was satisfied that it was a legitimate franchise tax for the privilege of carrying on business in Texas. The exploitation by a foreign corporation of interstate opportunities under the protection and encouragement of a state government afforded a sufficient basis for the taxation. In levying the privilege tax, the State was simply placing a charge upon that privilege commensurate with the protection it afforded.

. . . . . . . . . . . . .

"The late case of *International Harvester Co. v. Evatt* illustrates once more how capital stock may be used as a factor in the fiscal formula, along with other factors, in allocating to a State what fairly belongs to it in taxing a multi-state business organism. The taxpayer was a far-flung enterprise engaged in the business of manufacturing and marketing machinery. Ohio levied a franchise tax for the "privilege of doing business." Taxpayer owned and operated several factories, sales agencies, warehouses and retail stores in Ohio. Similar business houses owned by the taxpayer were located in other States. Some goods manufactured in other States were sold in Ohio. Taxpayer attacked the method by which the tax was calculated, as an alleged violation of the due process and commerce clauses. Under Ohio's allocation formula, the total value of the taxpayer's issued capital stock was divided in half. One half of the value of the stock was multiplied by a fraction whose numerator was the value of all of taxpayer's property

in Ohio and whose denominator was the total value of all of the taxpayer's property wherever located. The other half of the value of the capital stock was multiplied by a fraction whose numerator was the total value of 'business done' in Ohio and whose denominator was the total value of business done everywhere. The sum of these two products was used by Ohio as the tax base.

"The main objection to the method of calculation lay in the fact that the total value of business used as numerator in the second fraction included the proceeds of goods manufactured within, but sold outside, the taxing State, as well as the proceeds of goods manufactured in plants outside the State but sold in Ohio. Taxpayer contended that such inclusion violated the due process clause as well as the commerce clause in that it imposed a franchise tax on business done outside the State.

"A unanimous Court sustained the tax. It held that the tax did not constitute a levy on sales made outside the State in violation of the due process clause, since it was a franchise tax for the privilege of doing business in the State. The measure of the tax did not transform it to that of a tax on property outside the State. The tax was not inimical to the commerce clause since the apportionment formula used to ascertain the amount arrived at a fair conclusion as to what was the value of the intrastate business. Moreover, declared the Court: 'A state's tax law is not to be nullified merely because the result is achieved through a formula which includes consideration of interstate and out-of-state transaction in their relation to the intrastate privilege.'

"The *Beauchamp* and *Evatt* decisions give recognition to the national character of the modern corporation whose private property is scattered through several States, but whose use, management and balance sheet are unitary. While apportionments between the intrastate and interstate activities have been upset upon a showing that they were materially contrary to fact, or that improper factors have been included, that argu-

ment had no basis in the *Beauchamp* and *Evatt* cases for the reason that the apportionment formula in each case was found to be fair; and the capital employed in any part of these multi-state businesses tended to make every other part of the business more valuable. The advantages of such large capital resources should be distributed fairly among all the States in which the corporation does business. In a large unitary enterprise such as the Ford Motor Company and International Harvester, property located outside the State, when correlated in use with property within the State, almost of necessity it seems, must affect the worth of the privilege within the State. So, in determining the value of the intrastate privilege, the weight given to the value of the property beyond the boundaries of the taxing State is simply a recognition of the value of the privilege granted within the taxing State.''

Another leading case is Butler Brothers v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991 (1941). The California franchise tax was upheld as assessed to Butler Brothers, an Illinois corporation, with wholesale distributing houses in several states, including one in San Francisco. The tax was computed by allocating to California a percentage of the corporation's net income. It was determined by averaging the percentages of three factors, property, wages, salaries, etc., and gross sales attributable to the San Francisco house and apportioned to all wholesale houses of the taxpayer. The Court recognized the unity of use and management of a business scattered through several states. It held that the three-factor formula contained appropriate ingredients of an apportionment formula; and the taxpayer failed to carry its distinct burden of showing by clear and cogent evidence that the apportioned franchise tax resulted in extraterritorial values being taxed. See also Duluth South Shore and Atlantic Railroad Co. v. Michigan Corporation and Securities Commission, 353 Mich. 636, 92 N. W. 2d 22 (1958), motion to dismiss appeal sustained

in ibid., 359 U. S. 310, 79 S. Ct. 876, 3 L. Ed. 2d 831; Stone v. Memphis Natural Gas Co., 201 Miss. 670, 29 So. 2d 268 (1947), affirmed in Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 68 S. Ct. 1475, 92 L. Ed. 1832 (1947); International Harvester Co. v. Wis. Dept. of Taxation, 322 U. S. 435, 64 S. Ct. 1060, 88 L. Ed. 1373 (1943); Southern Package Corp. v. State Tax Commission, 195 Miss. 864, 15 So. 2d 436 (1944); 51 Am. Jur., Taxation, Sections 862, 863, 84 C. J. S., Taxation, Section 453, pp. 884-887.

Under Section 9319, the statutory taxable capital of appellee in Mississippi was $22,514,841 for the year 1956. The ratio of appellee's equity capital to its total capital was 32.36%. Appellee's total investment in real and tangible personal property in Mississippi in December 1955 was $81,531,070. Applying the stated ratio to that figure, the equity capital invested in Mississippi real and tangible personal property was $26,384,454. So for the year 1956 appellee had an equity capital in this State of almost $4,000,000 in excess of that which the statutory formula assigned to the State of Mississippi.

Applying the same method for the tax year of 1957, the statutory formula assigned taxable capital employed in Mississippi in the amount of $25,642,500. The amount of equity capital invested by appellee in Mississippi real and tangible personal property on December 31, 1956, was $36,922,403.31. Hence for 1957 appellee's equity capital invested in Mississippi was in excess of $11,000,-000 over the statutory formula amount of taxable capital assigned to Mississippi.

The apportionment formula under Section 9319 results in an assignment to Mississippi for the year 1956, for example, of 8.4012% of appellee's capital stock, surplus, undivided profits and true reserves. With further reference to the reasonableness of this formula, it is noted that at least 10.9810% of the company's real and tangible personal property is located in Mississippi, and

8.9789% of its operating nonoffice salaries and wages are assigned to Mississippi by appellee's own tax returns. These percentages are closely related and similar to the percentage of 8.4012% of appellee's capital used, invested or employed in Mississippi, under the statutory apportionment formula.

■■ ■ These comparable figures are pertinent and persuasive evidence of the reasonableness of the statutory allocation formula under Section 9319, which was designed to make a reasonable approximation of the capital used, invested and employed in Mississippi by this multistate, unitary enterprise. We think the formula reaches that objective, and results in a measurement of the franchise tax which is reasonably related to the privileges granted by the taxing state. 51 Am. Jur., Taxation, Section 83. It is fairly calculated to assign to Mississippi that portion of taxpayer's capital employed in the State. 84 C. J. S., Taxation, Section 453, p. 885.

Moreover, appellee wholly failed to offer any clear and cogent evidence, or any substantial evidence whatever, to warrant a finding that the apportionment formula results in extraterritorial values being taxed. Railway Express Agency v. Va., 79 S. Ct. 411, 3 L. Ed. 2d 450 (1959); Cf. Northwestern States Portland Cement Co. v. Minn., and Williams v. Stockham Valve and Fittings, Inc., 79 S. Ct. 357, 3 L. Ed. 2d 421 (1959).

The franchise tax is not imposed on, or directly measured by, property, wages or gross receipts. These items are merely used in combination as component parts of a single formula for the allocation of capital used, invested or employed in Mississippi. They are simply subsidiary percentages looking toward the end result of a fair allocation of appellee's capital employed in this State. State Tax Commission v. John H. Breck, Inc., 336 Mass. 277, 144 N. E. 2d 87 (1957).

Accordingly, the decree of the chancery court setting aside the order of the State Tax Commission and hold-

ing the apportionment formula of Section 9319 to be invalid, is reversed. Judgment is rendered here for appellant, reinstating and affirming the order of the State Tax Commission of October 3, 1957, but modifying that order so as to award to appellee a refund of $710.00, which appellant admitted in its answer in the trial court appellee was entitled to receive.

Reversed and judgment rendered here for appellant, reinstating and affirming order of State Tax Commission, as modified.

*McGehee, C. J.,* and *Roberds, Lee, Kyle, Arrington* and *Gillespie, JJ.,* concur.

HALL, J., dissenting:

I respectfully dissent from the holding of the majority of this case. It is somewhat astonishing to me that the majority of the Court has written 29 pages and not one time has cited a single authority dealing specifically with the tax formula here involved. The majority concede that the application of the formula prescribed by the 1956 law results in an increase of 801 percent in one of the factors going into this formula, but dismisses this with the statement that the appellee's franchise tax for the year 1956 is increased by only 11.83 percent, and for the year 1957 by 10.78 percent. Nowhere does the controlling opinion undertake to explain or excuse this 801 percent increase in one of the subsidiary factors going into the formula as the same works out and is applied in actual figures. As I see it, the only reason that the controlling opinion does not deal further with this unexplained and outrageously high percent in this subsidiary factor is that there is no authority to sustain it.

Instead of citing a single authority specifically in point, the majority contents itself with a lengthy quotation from a little booklet by Professor Paul J. Hartman, published in 1953, and in that quotation there is elabo-

rated only the general principle that in dealing with an apportioned capital stock franchise and its working in the total scheme of state taxation, an apportionment formula may be adopted, but nowhere does the booklet in question undertake to justify such an apportionment formula as is prescribed by the 1956 law.

In the case of Butler Brothers v. Chas. J. McColgan as Franchise Tax Commissioner of the State of California, 315 U. S. 501, 86 L. Ed. 991, the Supreme Court of the United States was not by any means dealing with such a formula as we have before us in this case. As pointed out by Justice Douglas in his opinion in that case, ''We read the statute as calling for a method of allocation which is 'fairly calculated' to assign to California that portion of the net income 'reasonably attributable' to the business done there. The test, not here challenged, which has been reflected in prior decisions of this Court, is certainly not more exacting. * * * Hence if the formula which was employed meets those standards, any constitutional question arising under the Fourteenth Amendment is at an end.''

The majority opinion cites the case of Ford Motor Co. v. Tom L. Beauchamp, Secretary of State of the State of Texas, 308 U. S. 331, 84 L. Ed. 304. That case does not deal with or in any manner approach the question which we have here. It was there said: ''The exploitation by foreign corporations of intrastate opportunities under the protection and encouragement of local government offers a basis for taxation as unrestricted as that for domestic corporations. In laying a local privilege tax, the state sovereignty may place a charge upon that privilege for the protection afforded. When that charge, as here, is based upon the proportion of the capital employed in Texas, calculated by the percentage of sales which are within the state, no provision of the Federal Constitution is violated.'' That case is no authority whatsoever on the question which we have here.

The controlling opinion also cites Memphis Natural Gas Co. v. A. H. Stone, Chairman, State Tax Commission of Mississippi, 335 U. S. 80, 92 L. ed. 1830. That case was before the United States Supreme Court on an appeal from this Court as reported in 201 Miss. 670, 29 So. 2d 268. The U. S. Supreme Court said: "A glance at the activities, named above, listed by the Supreme Court of Mississippi, shows that there is no possibility of multiple · taxation through the same exactions by other states. The amount of the tax is reasonable. It is properly apportioned to the investment in Mississippi.

"However, a state tax upon a corporation doing only an interstate business may be invalid under our decisions because levied (1) upon the privilege of doing interstate business within the state, or (2) upon some local event so much a part of interstate business as to be in effect a tax upon the interstate business itself." We have no such situation in the case now before us as was presented by the Memphis Natural Gas case.

I readily agree with Professor Hartman that a proper apportionment formula may be adopted and used, so long as the same does not result in unjustly increasing the Mississippi tax and so long as the same does not tax in Mississippi a substantial portion of the income from other states without duplicating the same.

Mention is made in the controlling opinion of the fact that the appellee owns an interest in some Mississippi oil wells, which are not operated by it, and also the fact that it owns some compressor stations in Mississippi and four pumping stations within the state and approximately 925 miles of pipeline and a number of residences for its employees in connection with the operation of the compressor stations, but it is undisputed that the severance tax due the state on the oil produced is paid and the ad valorem taxes on all of the tangible property, real and personal, including the pipeline is being regularly paid and there is no contention that the state is

losing any ad valorem taxes whatsoever on these several properties.

I am unable to bring myself to the view that simply because an apportionment formula may be used is no reason whatsoever for the apparent holding that just any apportionment formula does not offend the Constitution.

*Holmes, J.,* joins in this Dissent.