650 So.2d 1353 (1995)
MISSISSIPPI STATE TAX COMMISSION
v.
CHEVRON U.S.A., INC.
No. 93-CA-0787.
Supreme Court of Mississippi.
January 19, 1995.
Rehearing Denied March 30, 1995.
*1354 Bobby R. Long, MS State Tax Com'n, Gary W. Stringer, Jackson, for appellant.
William F. Goodman Jr., Jamie G. Houston III, Watkins & Eager, Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and McRAE, JJ.
McRAE, Justice, for the Court:
Chevron, U.S.A., Inc. appeals the Mississippi Tax Commission's (hereinafter "Commission") interpretation of the franchise tax formula as set forth in Miss. Code Ann. § 27-13-13 for a multistate corporation. The Commission conducted a hearing on February 5, 1992, on the tax liability of Chevron, U.S.A., Inc. and held it owed additional franchise taxes in the amount of $2,240,304.00 for the 1989 and 1990 fiscal years. Chevron filed suit in the Hinds County Circuit Court, *1355 which reversed the Commission's order requiring the payment of additional franchise taxes. The specific issue on appeal is whether actual or hypothetical Mississippi downstream receipts should be used in the formula for determining franchise tax liability. Thereafter, the Commission perfected an appeal to this Court. The following issues were raised:
I.
The lower court was incorrect in its interpretation of the franchise tax formula for multi-state corporations as set forth in Miss. Code Ann. § 27-13-13.
II.
The Chancellor was in error in concluding that the interpretation of the statutory formula raises constitutional concerns.
Finding that the Commission was correct in its interpretation of the franchise tax requirements of Chevron, we reverse the judgment of the lower court.

FACTS

Overview of Chevron
The franchise tax controversy between Chevron and the Mississippi Tax Commission has a long history dating back to when the refinery was built in 1963. The current controversy revolves around whether the Commission should use the so-called formula method or actual receipts to determine the amount of taxes owed to the State. Chevron primarily defines "receipts" to include the company's sales, but it can also include dividends, interest, rents, royalties and other income. Franchise tax analysis must occur within the context of income tax formulation due to the nature of the franchise tax statute. However, it must be kept in mind that the two taxes have totally different premises for their support. While both taxes are revenue builders for the state, income taxes are based on taxing individuals and entities on monies made whereas franchise taxes stem from the notion that a company should pay for the privilege of operating its business in this state.
There are two types of taxes which corporations in Mississippi must pay: income and franchise. State income taxes and state franchise taxes are reported on the same state-prescribed form. These two taxes are also tied together by the statutory requirement that if a corporation uses a formula method of apportionment in preparing income tax returns, the Commission expects it to also use a formula method for franchise tax determinations. Miss. Code Ann. § 27-13-13, the statute applicable to the Chevron and Commission controversy, states:
In the case of organizations doing business both within and without Mississippi, the value of capital employed in this state shall be determined by first computing the ratio between (1) the real and tangible personal property owned in Mississippi and gross receipts from business carried on in Mississippi, and (2) the total real and tangible personal owned and gross receipts wherever located and from wherever received. Said ratio then shall be applied to the total capital stock, surplus, undivided profits and true reserves and the result of that application shall be the capital employed in this state. Provided, however, that the amount of the determined capital in Mississippi shall in no case be less than the assessed value of the Mississippi property of the organization for the year preceding the year in which the return is due.
For the purpose of this section, an organization which uses a formula method of apportionment in making income tax returns to this state shall determine its gross receipts from business carried on in Mississippi by applying total unitary receipts the ratio achieved, or which would be achieved by such formula and adding to the result of such application any nonunitary Mississippi receipts.
Miss. Code Ann. § 27-13-13 (Revised 1991).
A brief discussion of Chevron's participation in Mississippi may aid in understanding *1356 how receipts (sales) are derived for tax purposes. Chevron is a world-wide corporation headquartered in San Francisco, California. Chevron, U.S.A., a domestic operating company, is the subsidiary of Chevron (hereinafter all references to Chevron will be Chevron, U.S.A. unless otherwise stated). It was issued a Certificate of Authority to do business in Mississippi on December 29, 1956. Chevron also does business in the other forty-nine states.
In the petroleum industry, Chevron operates both "upstream" and "downstream" activities in Mississippi. "Upstream" operations refer to the exploration and production of petroleum products. "Downstream" operations are basically twofold: refining crude oil to a usable product and distribution of that product to the consumer. Both activities of Chevron are taxable by the State of Mississippi. Chevron is audited to insure that these taxes are paid. During the years 1989 and 1990, the Commission found discrepancies in the taxes that Chevron had paid on its downstream operations versus what was owed.
For the year 1989, Chevron produced 4,341,309 barrels of oil and 3,613,692 MCF of gas (MCF is a quantity of measurement for gas just as a barrel is a quantity of measurement for oil. One MCF equals 1000 cubic feet). In 1990, Chevron produced 3,880,149 barrels of oil and 6,409,699 MCF of gas. The refinery in Pascagoula, Mississippi processes over twelve million gallons of crude oil per day or approximately three hundred barrels per day. It employs over 1,100 people and approximately 400 contractors per year. The products from the refinery are distributed both within and outside Mississippi. The Pascagoula refinery is the largest Chevron owns in terms of processing capability.
In addition to the refinery, Chevron owns and operates four petroleum terminals in Mississippi which are located at Pascagoula, Meridian, Collins and Greenville. During each of the audits in dispute, these terminals received and distributed approximately 200,000,000 gallons of petroleum products. All Chevron products processed in Mississippi are distributed by one of four methods: vessel, pipeline, rail car (tanker) or tank truck.
Pipeline and marine sales are instigated by a customer contacting a Chevron representative in Houston, Texas. At this point, a customer number is established, and the customer can then call one of Chevron's terminals and indicate the amount of product needed and the method of shipment. This information is transmitted to Chevron's central order entry group in Concord, California which invoices the customer and the terminal. The customer makes payment to Chevron's bank in San Francisco, California.
Chevron contends that the real and tangible personal property in Mississippi can be determined by these corporate records. Its records indicate who the customer was, what product was sold, the origin of the sale, and the destination of the product sold. Chevron advocated that based on these records, the downstream receipts for the company can be directly determined, and therefore, the statutory formula, as required by the Commission, should not be applicable.

Income Tax Assessment
Mississippi requires corporate taxpayers doing business in multiple states to report and pay income tax on the basis of direct accounting whenever feasible. When this method is used to determine net business income, there is no estimate or approximation. The State requires multi-state corporate taxpayers to report income tax on the basis of apportionment only when direct accounting is impossible. Apportionment simply means an estimation of the taxpayer's net income. Mississippi's system for tax reporting prefers direct accounting presumably because it is more accurate. Direct or separate accounting involves interpreting from the company records what portion of the company's net income is attributable to Mississippi.
Mississippi provides for a formula method by default, i.e. only if income cannot be traced from direct records. The formula averages three downstream components: payroll, *1357 property and sales. See Miss. Code Ann. § 27-7-23.
Chevron can account directly for expenditures in Mississippi in its upstream aspect of the business, but not in its downstream business due to factors, such as marketing a product, from which it is difficult to ascertain a value. For downstream operations, Chevron is required to derive a ratio from its property, payroll and sales in Mississippi by averaging these together from actual company records to achieve a hypothetical income to be taxed. Chevron argued that the Mississippi sales factor used in income tax law should also be used as the Mississippi receipts factor for franchise tax purposes. This argument ignores the different concepts behind the two tax statutes.
The majority of multi-state corporations can identify their property and payroll factors, but the sales factor poses problems. The problem is where to allocate an interstate sale. For example, Chevron produces petroleum products at its refinery in Pascagoula, Mississippi. A customer wanting to receive a finished product in Florida must place an order in California or Texas. Conceivably, any one of the four states could claim the sale: California, Florida, Mississippi, or Texas. Corporations use five ways to apportion interstate sales for income tax purposes:
1. Destination Sales
2. Sales Office
3. Origin Sales
4. Extent of Sales Activity
5. State of Acceptance
Individual states choose which method is acceptable for their income tax statutes. While property and payroll factors in the income tax formula may by interchangeable, the sales factor, due to the uncertainty and different apportionment theories, does not necessarily give an accurate reflection of what sales are attributable to a particular state for franchise tax purposes.
Mississippi follows a destination sales theory which means that the sale is allocated to the state where the product is delivered to the customer. However, this theory does not identify what is actually being done in Mississippi, rather, it is a method by which interstate sales are apportioned to the various states where the corporate taxpayer does business.
The destination sales theory was specifically rejected by this Court as a way to account for Mississippi receipts for franchise tax purposes. See Southern Package Corp. v. State Tax Comm'n, 195 Miss. 864, 15 So.2d 436 (1944). In Southern Package, the company, which manufactured fruit and vegetable boxes or crates in Mississippi, attempted to advocate the same idea as Chevron: that only receipts from sales begun and sold in this state should be used, thus excluding receipts from sales made in interstate commerce. This contention reduces the amount of franchise tax a company would owe and does not accurately reflect activity being conducted in the state. This Court recognized that franchise tax is imposed on a corporation based on what is actually being done in Mississippi, regardless of the ultimate destination of the product. Id. 15 So.2d at 437-38.

Franchise Tax Assessment
A franchise tax is a tax generally measured by capital for the privilege of doing business in the state. In other words, a company is taxed on business that is actually being done or carried on in Mississippi. Capital derivation is determined by a two-step process: one step is to determine total capital and the other step is to determine a relationship to activities in the state to the total activities of the corporation nationwide. The Commission assesses the tax on the corporation's total capital as reflected in the company records when it operates exclusively within state. However, with corporations which operate within and outside the state, the Commission is required to determine what portion of the corporation's capital is being utilized in Mississippi. The following equation represents the franchise tax formula which is the subject of this appeal:
*1358
 Mississippi property + Mississippi receipts
__________________________ _________________________ = ratio
 Property everywhere + Receipts everywhere
This two-factor formula is used to determine what part of the corporate taxpayer's capital is used in this state. In order to do this, total capital is multiplied by the ratio. The Chancellor found the following statutory ratio for 1989 to be acceptable:
 $ 1,231,196,564 + 75,801,931 (up) + 798,418,628 (down)
_______________________________________________________________________
 16,002,955,782 + 23,138,944,346
 = 5.37893%
When this percentage figure is multiplied by $619,097,000, Chevron's capital in Mississippi, which is undisputed, the franchise tax due is $1,547,957.
The Chancellor accepted the following ratio for 1990:
 $ 1,483,390,350 + 84,034,829 + 925,557,835
_______________________________________________________________________
 15,257,146,894 + 29,948,554,325
 = 5.51475%
This ratio resulted in Chevron's capital in Mississippi being $665,438,000 in 1990 for a franchise tax liability of $1,708,330 which was paid.
The second paragraph of Miss. Code Ann. § 27-13-13 calls for another formula in order to identify the Mississippi receipts portion of the first formula. The following equation represents this formula:
 Income Tax Ratio x Total Unitary Receipts = MS Unitary Receipts
MS Unitary Receipts + MS Nonunitary Receipts = MS Receipts
The Commission multiplied this average times total downstream receipts to get that portion of the numerator that is the Mississippi receipts.
This litigation turns on whether it is proper to use a formula to determine Mississippi receipts when Chevron can report actual receipts so that a franchise tax may be imposed.
The State and Chevron differed in the formula as to what Chevron's 1989 downstream receipts were in Mississippi by more than twice the figure: Chevron claimed $798,418,628.00, and the Commission claimed $1,669,544,292.00.
For the year 1990, Chevron and the Commission once again agreed on upstream receipts, but disagreed on downstream receipts. *1359 Chevron claims its receipts were $925,557,835.00, which were directly ascertained from company records whereas the Commission claimed that Chevron's downstream receipts were $2,234,290,825.00.
In both years, the Commission applied the income tax ratio to total receipts generated by the multistate operation to derive at the aforementioned figures. For the year 1989, the income tax ratio was 9.38%, and for 1990, the ratio was 9.54%. Total receipts for 1989 were approximately $23 billion, and for 1990, total receipts were approximately $29 billion.
In the Commission's formula for income taxes, Mississippi property is divided by total downstream property, Mississippi payroll is divided by total downstream payroll and Mississippi receipts are divided by total downstream receipts. All three are then averaged such that actual receipts are used to determine hypothetical receipts. Chevron claimed that the only reason its income tax liability cannot be directly determined and is estimated by an apportionment formula is because the company cannot identify Mississippi expenses. Chevron claimed that this is not true of receipts. Chevron advocated paying franchise taxes on actual receipts instead of a formula because so-called "bizarre results are avoided." The bizarre results that are avoided are the inflation of franchise taxes as shown by the increased amount owed.

Income and Franchise Taxes Compared
For franchise tax purposes, Chevron claimed it can determine its receipts from the company records, which directly account for those receipts, and that the receipts are nonunitary, that is, separable. The Commission argued that a formula should be used because the company cannot directly account for downstream receipts. Chevron admitted that it cannot directly account for receipts for income tax purposes because such calculations include expenses which are unknown in marketing and are also a significant facet of downstream operations. Chevron claimed that in franchise taxes, expenses are not a part of the equation, and therefore, since all figures are known, no formula is needed.
Chevron claimed that its records are maintained on a destination and origin basis so that it can determine actual receipts for Mississippi. As mentioned, a sale has a number of descriptors such as origin, destination, and customer. Chevron recognizes intercompany transactions as sales, but the company only attributes a sale as being in Mississippi when the customer physically comes to the state or the product is consumed in the state. This does not reflect the volume of business that Chevron conducts within this State, the basis on which franchise tax liability is now determined.
The Commission's position was that the receipts from the downstream operations cannot be directly allocated for franchise tax purposes and that the term "unitary receipts" in the franchise tax statute refers to all receipts derived from Chevron's unitary business which would include all receipts from its downstream operations. The franchise tax statute does not contemplate using simply Mississippi receipts as identified by a company in calculating income taxes owed to the state, rather, the State legislature developed its own formula for identifying receipts for franchise taxes.

Unitary vs. Nonunitary
The concept of unitary receipts has meant that income which one cannot separately and directly account for. For income tax purposes, Chevron cannot determine how much advertising, research, cost of goods sold, and inventory is attributable to Mississippi, as distinguished from its total expenditures for these items, except through some type of apportionment. The Commission advocates that the statute is designed so that if a company uses an apportionment formula in its income tax calculations, then it is also required to determine gross receipts by a formula when calculating franchise taxes owed.
Using property in the formula inflates Chevron's downstream receipts since its investment in Mississippi is very high due to the refinery. The same holds true with payroll because of the large number of employees *1360 at the refinery. The State uses Chevron's actual downstream receipts in its formula and has audited this figure and accepted its accuracy.
The term "unitary receipts" in the franchise tax language of Mississippi's statute is not expressly defined. Chevron argued that whether or not a company or its multi-state business can be categorized as unitary is not the decisive factor in interpreting the statute. Chevron claimed it is not the nature of the business or activity, i.e. whether or not it is unitary, which controls whether actual book figures or apportioned estimates are used, but rather, it is the accounting records which govern. Thus, it asserts that any unitary company that can directly account for Mississippi receipts and expenditures must report net income or loss directly from the company records.

DISCUSSION OF THE LAW

I.

The lower court was incorrect in its interpretation of the franchise tax formula for multi-state corporations as set forth in Miss. Code Ann. § 27-13-13.
The Commission argued that Chevron is attempting to pay less franchise taxes based on a sales destination theory which was expressly rejected by this Court. See Southern Package Corp. v. State Tax Comm., 195 Miss. 864, 15 So.2d 436 (1944). Both parties agree that a corporate franchise tax is imposed on a company for the privilege of doing business in the state. However, they differed somewhat on how this privilege should be measured. Chevron, relying on Miss. Code Ann. § 27-13-13, claimed that the privilege is taxed by capital employed in the state. The Commission claimed that a franchise tax is imposed on business which is actually being done or carried on in this state which means interstate sales should be included in such calculations.
To an extent, Chevron is correct in stating that § 27-13-13 provides an estimation procedure only with respect to unitary receipts and that nonunitary receipts are to be added to any unitary receipts attributed to Mississippi by this estimation. The logic is that where a company has nonunitary receipts, those which are identifiable, but no unitary receipts, no estimation is necessary. In practice, such analysis provides workable results, but ignores the first clause of the second paragraph of § 27-13-13: "For the purpose of this section, an organization which uses a formula method of apportionment in making income tax returns to this state shall determine its gross receipts from business carried on in Mississippi by applying to total unitary receipts the ratio achieved, or which would be achieved, by such formula and adding to the result of such application any nonunitary Mississippi receipts." Miss. Code Ann. § 27-13-13 (emphasis added). Chevron uses a formula method of apportionment in calculating its income tax returns for the State of Mississippi. Chevron admitted there is a connection between the income tax statute and the franchise tax statute. In fact, Chevron advocated comparing the income tax and franchise tax statutes when interpreting the meaning of the words "unitary" and "nonunitary", as they exist in the income tax statute Miss. Code Ann. § 27-7-23, because their meanings in that section shed light on how they may be understood in the franchise tax apportionment statute, Miss. Code Ann. § 27-13-13.
Pertinent portions of the income tax statute where these terms' definitions can be gleaned from the context are as follows:
Any corporation, taxable both within and without this state, which maintains or could maintain books of account detailing allocation of receipts and expenditures reflecting clearly the business income attributable to property owned or business done in this state, shall determine Mississippi net business income on the basis of direct or separate accounting. If the commissioner finds that direct or separate accounting of Mississippi net business income does not reflect the true income attributable to property owned or business *1361 done in Mississippi, or, if by reason of the unitary multi-state activities of the corporation direct or separate accounting for Mississippi net business income is impossible, the net business income shall be apportioned to this state by use of formulas of apportionment prescribed by the commissioner.
Miss. Code Ann. § 27-7-23(c)(2)(B)(iii) (emphasis added).
Unitary is also mentioned in another subsection of the statute which states:
Business income derived from unitary multi-state activities which cannot be allocated to any state shall be apportioned to this state by use of formulas prescribed by the commissioner.
Miss. Code Ann. § 27-7-23(c)(2)(B)(ii) (emphasis added).
The position of the Commission is that the term "unitary receipts" cannot be directly allocated for franchise tax purposes. The Commission also referred to Chevron as a unitary business which should include all its receipts from its downstream operations as unitary. Chevron claimed that simply because a taxpayer uses a formula in making state income tax returns does not necessarily connote that all the Mississippi receipts are unitary. However, this argument overlooks the interpretation of our franchise tax statute that has already been accepted by this Court. See Miss. State Tax Comm'n. v. Tenn. Gas Transmission Co., 239 Miss. 191, 116 So.2d 550 (1959). In Tennessee Gas, this Court discussed the sub-formula of unitary gross receipts by stating the following:
"[A] taxpayer which uses in its income tax returns a formula method of apportionment, and which is a multistate corporation, must determine its total gross receipts from Mississippi business (a) by applying to its total unitary receipts [wherever located and received] the ratio which would be achieved by such income tax formula. The result is the unitary Mississippi gross receipts, (b) to this is added any nonunitary (wholly local Mississippi receipts)."
116 So.2d at 555.
Tennessee Gas was a company similar to Chevron in that it maintained property in Mississippi, yet conducted interstate sales and could ascertain its wholesale gasoline sales from the company books. However, this Court did not allow taxes to be paid as Tennessee Gas advocated, and Chevron now similarly suggests the company's wholesale gas sales were not included in nonunitary receipts, but were included in the income tax formula which is applicable to unitary receipts only. Id. at 554-55.
While Chevron and the Commission can have a boxing match on what the interpretation of the statute should be, this Court has held that the amount of franchise tax and the mode of measurement are "matters which rest within legislative discretion, when not burdensome or oppressive and when solely for revenue." Southern Package Corp. v. State Tax Comm., 195 Miss. 864, 15 So.2d 436 (1944). See also, Miss. State Tax Comm. v. Illinois Central Gulf Railroad Co., 360 So.2d 1218, 1211 (Miss. 1978). We further stated in Tennessee Gas that:
The Legislature manifestly had in mind the established concept in the law of taxation of a unitary business. It is a term applied to concerns carrying on one kind of business component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as individual units. Maxwell v. Kent-Coffey Mfg. Co., 1933, 204 N.C. 365, 168 S.E. 397, 399, 90 A.L.R. 476; 43 Words and Phrases, p. 256 and Pocket Part. The test in determining what is a unitary business is whether all factors are essential to the ultimate realization of gain. The operations conducted in one state benefit and are benefited by the operations conducted in another state. If its various parts are interdependent and of mutual benefit, so as to form one integral part rather than several business entities, it is unitary.
116 So.2d at 556.
Case law interpreting this statute is limited. As previously analyzed, the premier case discussing this statute is Miss. State Tax Comm. v. Tennessee Gas Transmission Company, 239 Miss. 191, 116 So.2d 550 *1362 (1959). Tennessee Gas maintained natural gas pipelines across Mississippi. Most of its receipts were out-of-state with only nominal in-state sales. The nature of the pipeline industry is that sales (or receipts) cannot be easily determined and are, therefore, unitary. Although Chevron's business in Mississippi begins in this state and is conducted here through the refinery, its business is unitary in nature. Therefore, all receipts from Chevron's downstream unitary business would be unitary receipts for franchise tax purposes. This is true even though Chevron claimed that actual sales (or receipts) can be "geographically identified" and directly accounted for. Furthermore, our statute mandates that a corporation using income tax apportionment, such as Chevron, must follow a formula as the prescribed method of determining franchise taxes owed.

II.

The interpretation of the statutory formula as advocated by the Commission raises constitutional concerns.
The Commission argued that Chevron made an Equal Protection argument pursuant to the Fourteenth Amendment of the United States Constitution.
The lower court never reached a constitutional analysis of the statute because it found by adopting Chevron's Findings of Fact and Conclusions of Law in toto, that the tax estimation as calculated by the Commission represented an unfair and excessive assessment. However, in the Commission's brief, it mentioned the constitutional issue on appeal. Yet, Chevron denied that there is a constitutional issue and focuses instead upon an interpretation of the statute. Neither party addressed the issue in oral arguments before this Court. In addressing the constitutional claim, there is no proof in the record that the Commission is taxing Chevron differently than any other petroleum entity operating within the state.
This Court need not consider the constitutionality of the statute since it has already been upheld under Mississippi State Tax Commission v. Tennessee Gas Trans. Co., 239 Miss. 191, 116 So.2d 550 (1959).

CONCLUSION
A literal interpretation of Miss. Code Ann. § 27-13-13 (Rev. 1991) supports the Commission's application of the formula. The bottom line is that Chevron is operating a unitary business in this state, and therefore, should pay for the full pleasure of such operations  not simply a portion of its sales as identified by the company, but for all its operations. Only then will Chevron have fulfilled the reasoning behind why states impose franchise taxes on multistate corporations in the first place. For the aforementioned reasons, we reverse the decision of the lower court and reinstate the order of the Commission imposing judgment for franchise tax in the amount of $862,182 for the year of 1989 and $1,378,122 for the year of 1990, together with interest and costs, and therefore, remand to the lower court to enter judgment consistent with this opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.