SMITH, Justice.
Tenneco, Inc. appeals from an adverse decree of the Chancery Court of the First Judicial District of Hinds County entered in a suit brought by it against Mississippi State Tax Commission under the provisions of Mississippi Code 1942 Annotated section 9220-31 (1952). The suit attacked, and the decree upheld, an order of the Mississippi State Tax Commission which disallowed certain items claimed as expense deductions and losses on Tenneco’s Mississippi income tax returns for the years 1963, 1964 and 1965. Mississippi State Tax Commission and its Chairman cross-appeal from that part of the decree which reduced penalties and interest assessed against Tenneco by the Commission.
In view of the recent decision by this Court of Mississippi State Tax Commission v. Mississippi-Alabama State Fair, Miss., 222 So.2d 664 we consider it necessary to point out here that Tenneco’s petition in this case was filed in the Chancery Court of Hinds County, that court having been vested with jurisdiction by the Legislature to hear and determine controversies of this kind, under the terms of Mississippi Code 1942 Annotated section 9220-31 (1952). In the present case, the chancellor heard evidence and determined the cause as in “other cases” as provided by the statute. The appeal here also is by the authority of that section. Unlike this case, Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664 (decided by this Court on May 12, 1969), involved an appeal to the circuit court, under Mississippi Code 1942 Annotated section 9075 (1952). This Court held in that case that the act of the Tax Commission appealed from was legislative in character, and that judicial review was limited under the Constitution (as well as by the terms of the statute) to a consideration by the court of the record and transcript of testimony before the Commission.
As said in Culley v. Pearl River Industrial Commission, 234 Miss. 788, 108 So.2d 390 (1959), “The dividing line between a legislative and a judicial act is often imperceptible.”
In Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908) Justice Holmes said:
A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end.
In the same case, Justice Holmes contrasts the nature of legislation:
Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subj ect to its power.
This Court has said, in California Co. v. State Oil & Gas Board, 200 Miss. 824, 840, 27 So.2d 542, 545, 28 So.2d 120 (1946):
In order that any hearing shall be judicial in character, it must proceed upon past or present facts as such, which are of such nature that a judicial tribunal may find that they do or do not exist, while in making these conservation rules and the exceptions thereto the larger question is one of state policy.
In East Third Street Franklin v. City of Bend, 234 Or. 91, 380 P.2d 625, 630 (1963) it was said:
Whether a function imposed upon a court is “nonjudicial” and, therefore, in violation of the separation of powers principle, cannot be determined by applying abstract definitions of legislative and judicial functions. The validity of the imposition must rest upon practical considerations relevant to the efficient operation of government with due regard, of course, to the limitations upon the respective functions of the two branches fixed by tradition. If the duty imposed calls for the performance of functions to which the judicial machinery is adaptable, there can be no constitutional objection to the delegation.
*211 It is manifest, from the express provisions of section 9220-31, that the Legislature has made it the public policy of this state to provide a full evidentiary judicial hearing in cases of the character now under consideration. Moreover, major tax cases traditionally have been considered proper subjects for judicial determination in the courts of the several states and of the United States.
There were three questions presented in the present case requiring judicial determination:
(1) Were Tenneco’s gas leases unitary with its gas transmission pipeline ?
(2) What and how much interest expense was properly deductible ?
(3) Was Tenneco negligent in filing its return and thus subject to the imposition of a penalty?
These matters involved mixed questions of law and of the ultimate facts and were proper subjects for judicial determination.
The appellant, Tenneco, Inc. of Houston, Texas, describes itself as;
Tenneco, Inc. of Houston, Texas, a Delaware corporation, owns a pipeline system for the acquisition, transmission and sale of natural gas for resale under certificates granted by the Federal Power Commission. The Company’s multiple line system begins in the gas producing areas of Texas and Louisiana and extends into the northeastern states. The system crosses Mississippi and is comprised of approximately 12,000 miles of pipeline, gathering lines, and sales laterals, together with related facilities, including some sixty principal compressor stations. Natural gas leases owned by the company in Louisiana and Texas afford the company flexibility in its supply capabilities. Underground storage reservoirs in Pennsylvania and New York increase winter deliveries in the eastern markets.
Tenneco Corporation, a wholly owned subsidiary, owns all of the stock or a controlling interest in various subsidiaries engaged in other aspects of the petroleum industry, and in the agricultural, chemical and paper products industries.
Tenneco, therefore, is a foreign corporation engaged in both unitary (the interstate gas transmission pipeline) and non-unitary activities.
In each of the years here involved, (1963, 1964 and 1965), in arriving at its unitary net income for Mississippi tax purposes, Tenneco sought to allocate all of its interest expense to its gas transmission pipeline, and also to charge off losses incurred in acquiring gas leases and in exploring for and producing gas in other states.
The interstate gas transmission pipeline system, consisting of the pipeline, gathering lines, compressor stations and other related facilities, comprises Tenneco’s unitary activity. The pipeline extends from points in Texas and Louisiana into states in the northeastern United States, with approximately 15 per cent of its transmission volume capacity located in the State of Mississippi. Its non-unitary activities include ownership of other companies (approximately 50), engaged in agricultural, chemical, and paper products industries and in other aspects of the oil and gas industry.' Its unitary interstate gas transmission pipeline system, which lies partly within and partly without the State of Mississippi, is the only one of Tenneco’s activities subject to Mississippi income taxation.
In 1964 (for example) Tenneco’s total investments amounted to $1,853,933,532, of which $454,325,123 was invested in non-unitary securities activities, $318,806,758 in non-unitary gas exploration and development activities, and $1,080,801,651 in the unitary pipeline operation.
Since the gas transmission pipeline is a unitary activity, partly within and partly *212 without the State of Mississippi, Tenneco’s annual Mississippi income tax return is filed under Mississippi Code 1942 Annotated section 9220-12 (Supp.1968).
Mississippi Code 1942 Annotated section 9220-12(1) (c) (Supp.1968) provides:
In the case of gross income derived from sources partly within and partly without the state, the net income may first be computed by deducting the expenses, losses, or other deductions apportioned or allocated thereto, and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income; and the portion of such taxable income attributable to sources within the state may be determined by processes or formulas of general apportionment, prescribed by the commissioner, with the approval of the governor, (emphasis added).
The actions of the Tax Commission which are under attack by Tenneco may be stated briefly as: (1) disallowance of a portion of the deduction claimed for interest expense, Tenneco having sought to allocate its entire interest expense to its unitary operation (the gas transmission pipeline) and (2) refusal to allow a deduction claimed for certain losses and expenses incurred in gas exploration and development activities conducted wholly outside of the State of Mississippi.
Tenneco summarizes its contentions as follows:
1. The clear meaning of § 9220-12(1) (c) permits the company to deduct all interest expense it can directly allocate to its unitary pipeline operation; Article 105 of Regulations No. 13, denying direct allocation, is therefore invalid. Furthermore, some “ratable part” of the company’s remaining interest expense is also deductible under the statute.
2. The gas leases are an essential integral part of the pipeline, contributing substantially to its net profit, and should therefore be treated as unitary.
3.Separate accounting cannot be maintained for these leases, since there is no realistic method of valuing their contribution to the entire system.
It is the position of the Tax Commission, on the other hand, that Articles 105 and 247 of Regulations No. 13 implements the statute and is in nowise inconsistent with it. Article 105 of Regulations No. 13 provides :
Interest — There may be deducted from the gross income of taxpayers all interest paid or accrued during the taxable period, except such interest as was paid or incurred on moneys borrowed for the purpose of purchasing stocks or bonds when the income from such stocks or bonds is by the terms of this Act exempted from income taxation. If a non-resident individual or corporation allocates income and expense to this State, interest income and expense will not be reported. The exception will be those instances where the evidence of ownership in any interest bearing paper or instrument has acquired a business, commercial, or actual situs in this State.
If the non-resident individual or corporation is required to allocate or apportion income to the State, interest expense may be included in deductions, but such interest expense shall first be reduced by that percentage which stocks, bonds and property earning tax exempt or excluda-ble income bears to the total ownership of all property. Where interest is paid on a loan which was negotiated for, and the proceeds from which were used for the purpose of acquiring or continuing to hold assets of the above described nature, interest paid on such debt is not deductible in calculating net income of the debtor.
Article 247 of Regulation No. 13 provides in part:
Taxable net income of foreign corporations and non-residents — Except as provided elsewhere in these Regulations, and for the purpose of Section 11 of the *213 Act, foreign corporations as defined in Section 2(c) of the Act, and non-residents as defined in Section 2(f) of the Act, will be classified and shall determine their Mississippi net income, as follows :
(3) Taxpayers whose gross income is derived from sources partly within and partly without the State, but who, because of the unitary nature of the business, cannot maintain systems of account which will clearly and accurately reflect the gross and net income derived from within the State of Mississippi. These taxpayers shall determine their Mississippi net income in the manner hereinafter provided.
(4) Taxpayers whose gross income is derived from more than one business or activity and where only one or a part of such activities is unitary with respect to Mississippi and where separate accounting is and can be maintained on each activity or division, such taxpayers shall apportion the unitary income only in the manner hereinafter provided. If no apportionment formula hereinafter provided correctly applies, the Commissioner shall assign a formula which in his opinion will reasonably approximate Mississippi net unitary profits. Any other direct income shall be allocated to the state or states where same is earned.
Computation of unitary net income for classes three and four — Total net income, as computed for federal income tax purposes, shall be adjusted for deductions not allowable and income not taxable under the Mississippi Income Tax Law regardless of situs. From total net income thus adjusted there shall be deducted all income which is specifically allocable to Mississippi and other jurisdictions, less related expenses and a pro rata part of general and administrative expenses. The income allocable to specific states to be deducted shall include interest income, dividends, capital gains on the sale of property with a fixed situs, and income from business activity or the ownership of property in a specific state or states such as rentals, production of natural resources or any other income wholly earned within some specific jurisdiction or jurisdictions. When capital assets in the form of tangible personal property, which have been used or employed in the unitary business without any fixed situs, are sold or disposed of at a gain or loss, and said gain or loss is not otherwise reflected in Mississippi net income, said gain or loss must be reflected in the unitary net income in the ratio that depreciation on the assets charged against unitary net income while the taxpayer has been subject to the Mississippi Income Tax Law, bears to total depreciation charged on said assets.
When total unitary net income has been computed in the above described manner, a part thereof shall be apportioned to Mississippi by use of the proper formula, as hereinafter set out.
Since Tenneco’s gas transmission pipeline is an interstate activity unitary in character, its gross income is produced partly within and partly without the State of Mississippi. Moreover, because of its unitary character, it cannot be clearly or accurately determined what portion of its income derives from either source.
The interest cost of borrowed funds definitely shown to have been used exclusively in one or more of Tenneco’s non-unitary businesses would not, of course, be deductible from unitary gross income.
Moreover, it appears that borrowed funds on which the interest expense claimed as a deduction was incurred were not used exclusively in the unitary pipeline business, so that such interest expense might be treated as a proper deduction to be made directly from unitary gross income as coming within the first exclusionary provision of the statute.
*214 Where borrowed funds were used in both unitary and non-unitary activities and could not be accurately or directly allocated in any certain amount to either in a specific or realistic sense, it became necessary to utilize a formula to make an equitable apportionment of the interest expense between the two.
Non-unitary businesses are subject to direct accounting for income tax purposes. Businesses unitary in character conducted in more than one state necessarily present a problem of apportionment. In Mississippi this is accomplished by use of an apportionment formula. Evidence in the record indicates that Tenneco borrows for pipeline construction (its unitary operation) and accumulates funds from earnings and from issuance of equity capital to expand its securities holdings and non-unitary operations. Approximately 90 per cent of the income from the unitary system is paid out in dividends. Long-term pipeline construction is financed by the issuance of debentures. Not more than 40 per cent of the proceeds of these debentures has been put into non-pipeline investments. Approximately 60 per cent of Tenneco’s interest expense was allocated by the Tax Commission to its unitary pipeline operation and about 40 per cent was allocated to its non-unitary activities. It is admitted that Tenneco borrows money on its pipeline operation which it uses in undesignat-ed amounts to expand or increase its non-unitary operations and there is no realistic or accurate method available whereby it can be determined definitely and clearly where any specific amount of interest expense should be allocated.
 We have concluded that there is evidence in the record sufficient to support the Commission’s finding, as upheld by the chancellor, as the trier of facts, that all of Tenneco’s interest expense was within that class of “expenses, losses, or other deductions which cannot definitely be allocated” as contemplated by section 9220-12(1) (c). Moreover, Tenneco apparently has not or cannot maintain a system of accounting which will realistically and accurately reflect the specific proportion or amount of interest expense which may be properly assessed to its. unitary, as distinguished from its non-unitary, business.
It is argued by Tenneco that section 9220-12(1) (c), supra, requires a “two-step” procedure, and that Article 105 of Regulations No. 13, supra, under which the Tax Commission acted in this case, is invalid because it contravenes the statute in providing only a “one-step” procedure.
Section 9220-12(1) (c), supra, provides that expenses, losses or deductions which can be directly or specifically allocated shall be so allocated. This portion of the statute did not require implementation by rule or regulation, and such allocation may be made under the specific language of the statute. The statute provides further, however, that expenses, losses or other deductions which “cannot definitely be allocated” shall be apportioned under processes or formulas which shall be prescribed by the Commissioner, with the approval of the governor. While the statute refers to a “ratable part” of deductions, falling within this latter category, it can by no means be construed as excluding a case where all of the claimed expenses, losses or deductions are such that they cannot definitely be allocated and must be apportioned accordingly by use of a formula. The record in this case supports the conclusion that it was not possible, in any realistic or accurate manner, to allocate directly to the unitary system or to any one of Tenneco’s diverse businesses any certain amount of the interest expense incurred. Its uses of borrowed funds, as well as the purposes to which the respective incomes of the several businesses were devoted, supports the result reached by the Tax Commission. It was necessary that the Commission apportion the entire amount of interest expense as it did in order to determine the deduction to which Tenneco should be fairly entitled on its Mississippi tax return. The action of the Commission in so doing was neither ar *215 bitrary, capricious nor unreasonable. On the contrary, the Commission was justified on the record in concluding that, while admittedly a substantial amount of its interest expense should be allocated to the unitary system, no certain part of it was, or possibly could be, clearly identified or established in any definite amount as being exclusively a business expense of the unitary system. None of it, therefore, was within the first of the two categories set forth in section 9220-12(1) (c). In that situation, the Tax Commission necessarily and properly classified Tenneco’s interest expense as an expense, loss or deduction within the second category and dealt with it as provided by the statute as implemented by Article 105 of Regulations No. 13.
In each of the years in question, Tenneco took gas leases and explored for and produced gas in Louisiana and Texas. No part of this activity was in Mississippi. Tenneco sought to deduct from its unitary income losses resulting from its gas leases and exploration and development operations. Tenneco seeks reversal of the action of the chancellor in upholding the Commission’s refusal to allow this deduction.
The record reflects that, for the years in question, Tenneco’s activities in exploring for and producing gas outside of the State of Mississippi, such matters were susceptible of direct, separate and accurate accounting. The gas exploration and development activities produced (of the gas transported through the unitary pipeline system) 3}4 per cent in 1964 and 5 per cent in 1965. Not less than 95 per cent, therefore, was acquired in those years by purchase from other sources.
It appears from the testimony of a witness offered by Tenneco that the market value of this gas was determinable at the wellhead and that this value actually was used in its depletion schedule on its Federal income tax return. The testimony in the record discloses that Tenneco’s gas exploration and development activities in 1964 (for example) resulted in expenses amounting to $18,803,117, that the market value of the gas produced was $7,628,994, resulting in a loss of $11,174,123. This loss was one of the items for which Tenneco sought credit on its Mississippi tax return filed in connection with its unitary gas transmission business, and which was disallowed by the Tax Commission.
In its brief, Tenneco states: “What is at issue here is the extent to which- the apportionment formula is to be applied, that is, whether the income and expenses of the company’s gas leases are to be included in the apportionable net income. * *
The Tax Commission contends that, since the exploration and production activities were wholly outside the State of Mississippi, and were capable of direct, separate and accurate accounting, none of the income from such activities would be taxable in this state. Such income, if any, would be subject to taxation only in the state or states where the activities were being carried on. It does not constitute a part of the income of the unitary activity and its expenses and losses may not be deducted as such for Mississippi tax purposes on the tax return of the unitary system. It is argued that Tenneco’s exploration and .development activities provide a reserve source or supply of gas for transmission and sale through its unitary pipeline system indistinguishable, in any material respect, from eastern storage fields, maintained by Tenneco, where gas is re-injected and stored in order to have on hand a sufficient standby supply of gas to insure a high degree of deliverability.
The order of the Commission, as upheld by the chancellor, amounted to a holding that Tenneco’s gas leases and its gas exploration and development activities were not, as claimed, an “integral” part nor a “component” of the unitary gas transmission system. The profits and losses of this activity are susceptible of being accurately accounted for separately, and were conducted wholly without the State of Mis *216 sissippi. The net income, if there had been any, would not have been subject to Mississippi income tax and the losses which actually resulted could not be used as deductions in computing Tenneco’s unitary income for Mississippi tax purposes.
The Commission assessed Tenneco with a penalty of ten- per cent of the deficiency, and ordered it to pay one per cent interest per month thereon as authorized by Mississippi Code 1942 Annotated section 9220-25 (Supp. 1968). The chancellor set' aside the penalty and the additional interest.
The pertinent portion of the statute authorizing imposition of a penalty and the additional interest is as follows :
If any part of the deficiency is due to negligence, there may be added a penalty of ten per cent (10%) of the tax, and interest at the rate of one-half of one per cent (i/*> of 1%) per month, or part thereof, from the date the tax was due until paid; * * *.
The chancellor found that Tenneco had not been guilty of negligence within the meaning of the statute but had acted in good faith under its interpretation of the law. For those reasons, he set aside the penalty and relieved Tenneco of the additional interest imposed by the Commission, leaving the interest to be paid on the deficiency at one-half of one per cent {1/2 of l’%) . per month. From that part of the decree the Commission has cross-appealed. The action of the chancellor amounted to a finding of fact from evidence before him and we are unable to say from the record that he was manifestly wrong.
The only other question that requires mention involves the propriety of the inclusion by Tenneco within the property factor and within the labor factor of its apportionment ratios for the years in question of property and salaries applicable only to its non-unitary operations.
A similar contention was rejected by this Court in Columbia Gulf Transmission Co. v. Barr, 194 So.2d 890 (Miss. 1967).
Accordingly, the case will be affirmed both on direct and cross-appeals.
Affirmed on direct and cross-appeals.
GILLESPIE, P. J., and RODGERS, BRADY and PATTERSON, JJ., concur.