# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00325-SCT

*MISSISSIPPI STATE TAX COMMISSION*

*v.*

*MURPHY OIL USA, INC.*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 01/21/2003 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SAMUEL T. POLK |
| | GARY WOOD STRINGER |
| ATTORNEYS FOR APPELLEE: | JAMIE G. HOUSTON |
| | W. TERRELL STUBBS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED -10/13/2005 |
| MOTION FOR REHEARING FILED: | 06/23/2005 |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted. The prior opinions are withdrawn, and this opinion is substituted therefor.

¶2.     In 1999, the Mississippi State Tax Commission ("Commission") examined the Mississippi Combined Income and Franchise tax returns of Murphy Oil U.S.A., Inc. ("Murphy") for the following tax years: 1995, 1996, and 1997. As a result of this examination, on September 30, 1999, the Commission assessed additional franchise taxes and interest against

Murphy in the amount of $87,952.00. After two internal agency appeals, Murphy sought judicial review in the Chancery Court of Simpson County pursuant to Miss. Code Ann. § 27-13-45 (Rev. 2003). On January 17, 2003, the chancellor ordered that the additional franchise tax assessment made by the Commission "shall not be allowed." The Commission filed a timely appeal to this Court.

¶3. This Court has specifically rejected the Destination Sales Theory and instead looks to the volume of business actually conducted in this state. *Miss. State Tax Comm'n v. Chevron U.S.A., Inc.*, 650 So. 2d 1353 (Miss. 1995). We also find that the franchise tax imposed does not violate the commerce or due process clauses of the United States Constitution. Thus, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶4. Murphy is a Delaware corporation with its principal place of business located in El Dorado, Arkansas, and is authorized to do business in the State of Mississippi. Murphy is in the business of refining and marketing petroleum products for wholesale and retail purposes. As part of its operations, Murphy owned and operated a refinery in Meraux, Louisiana, and refined products produced at this refinery were shipped through tank trunks, by barge or through a pipeline known as the Collins Pipeline located in Collins, Mississippi. In addition to refining and selling products at wholesale, Murphy also owned and operated service stations in Mississippi to sell products at retail.

¶5. The Collins Pipeline starts at Meraux, Louisiana, and terminates at the T&M terminal located in Collins, Mississippi. From 1995 to the present, a corporation by the name of Collins Pipeline Company owns Collins Pipeline. During the tax years in issue, Collins

Pipeline Company was owned by Murphy and Chalmette Refining, Inc. The facility at which this pipeline terminates, T&M Terminal, is owned by T&M Terminal Company. T&M Terminal Company, during the years in question, was also owned by Murphy and Chalmette.

¶6. The T&M terminal at which the Collins Pipeline terminates consists of ten tanks, referred to as "breakout tankage" where products shipped on the pipeline can be stored. Additionally, at the T&M terminal, there are pipes, valves and other equipment that connect that facility to both Colonial Pipeline and Plantation Pipeline to allow for the injection of product from the T&M terminal into either of these pipelines. Colonial Pipeline begins at Pasadena, Texas, and terminates in New Jersey, with numerous terminals and facilities along its pipeline system in Texas, Louisiana, Mississippi, Alabama, Tennessee, Georgia, South Carolina, North Carolina, Virginia, Maryland, Delaware, and New Jersey. Plantation Pipeline begins in Baton Rouge, Louisiana, and terminates in Washington, D.C., with numerous terminals and facilities along its pipelines in Louisiana, Mississippi, Alabama, Tennessee, Georgia, South Carolina, North Carolina, Virginia, and the District of Columbia.

¶7. The sales by Murphy, which the auditor reclassified as Mississippi sales resulting in the assessment of additional franchise taxes, were sales made by Murphy where title and control of the property sold was transferred to the purchaser at Collins, Mississippi. The amount of these sales for each of the tax years in issue is as follows: (1) tax year 1995 = $156,826,131.00; (2) tax year 1996 = $199,285,823.00; and (3) tax year 1997 = $155,652,973.00. The negotiations of these sales began with traders in El Dorado, Arkansas, determining what product being manufactured in Meraux is available for sale. Based upon a review of the market conditions, a trader would determine which pipeline would give Murphy

the greatest return on its sale. After this was determined, the trader would attempt to market the product to potential buyers who were willing to purchase the product using the pipeline selected.

¶8. The product to be sold belonged to Murphy while it was being shipped from Meraux to Collins on the Collins Pipeline and while it was in the breakout tankage at the T&M terminal. The product would remain in the breakout tankage at T&M terminal for a few hours up to several days. The length of this time the product is stored in Collins, Mississippi depends on quantity and product cycle requirements of the pipelines. Many times, Murphy would already have a buyer for the product before it left the refinery in Meraux, Louisiana. At other times, Murphy would not have a buyer for the product until after the product had left the refinery and at times, even after it had been placed in the breakout tankage at the T&M terminal. Under the terms of the sales at issue, title, possession and control of the product passed from Murphy to the purchaser when the product was injected from the T&M terminal into either the Colonial Pipeline or the Plantation Pipeline in Collins, Mississippi. Title actually passed as the product was being metered when it was injected into the pipelines. This metering of the injection of the product into Colonial or Plantation Pipeline was used by Murphy to bill its purchaser for payment. Upon receipt of the report of this metering that took place in Collins, Mississippi, Murphy would bill its customers who would then pay Murphy by wire transfer.

¶9. Upon injection into Colonial or Plantation Pipelines, Murphy had no knowledge of the whereabouts of the product or where the product is ultimately offloaded. Murphy contends that these sales are not Mississippi sales for determining its Mississippi sales factor.

4

Furthermore, Murphy had not included these sales as sales in any other state in determining the sales factors.

¶10.    The Commission examined the Mississippi Combined Income and Franchise Tax Returns of Murphy for tax years 1995, 1996 and 1997.   As a result of this examination, an assessment of additional Mississippi franchise tax and interest was issued against Murphy on September 30, 1999.    Murphy, pursuant to Miss. Code Ann. § 27-13-43, appealed this assessment to the Board of Review of the Commission for a hearing on this matter.    After proper notice and a hearing before the Board of Review on March 9, 2000, the Board entered its order affirming the assessment in the original amount of $87,952.00.    Following this decision by the Board of Review, Murphy appealed to the full Mississippi State Tax Commission for a hearing on the decision of the Board of Review to affirm the tax in question. A hearing before the full Commission was held on June 21, 2000.   On December 6, 2000, the full Commission affirmed the assessment in issue.    Murphy was ordered to pay to the Commission the entire assessment of $87,952.00 plus up to date interest.

¶11.    Following the decision of the full Commission, Murphy timely filed a petition for judicial review in the Chancery Court of Simpson County.    After discovery and trial, the chancellor signed a final judgment wherein he ordered "that the additional assessments made by the Mississippi State Tax Commission shall not be allowed and that the sales for the years in question shall be those that were, in fact, downloaded in the state of Mississippi for final destination in the state of Mississippi."    The Commission timely filed its appeal with this Court.

## ISSUES

5

I.      **Whether the Destination Sales Theory Should Be Applied for Franchise Tax Purposes.**

II.     **Whether the Franchise Tax Violates of the Commerce or Due Process Clauses of the United States Constitution.**

### ANALYSIS

### I.

¶12.    The chancery court reviewed this matter in a full evidentiary hearing, complete with a full record. In *Tenneco, Inc. v. Barr*, 224 So. 2d 208, 211 (Miss. 1969), this Court held that "[i]t is manifest, from the express provisions of [Mississippi Code 1942 Annotated] § 9220-31, that the Legislature has made it the public policy of this state to provide a full evidentiary judicial hearing in cases of the character now under consideration." Section 9220-31 is the predecessor to the applicable current Miss. Code Ann. §§ 27-7-73 (income tax–judicial review) and 27-13-45 (franchise tax–judicial review). In *Tenneco*, as well as in the present matter, "the chancellor heard evidence and determined the cause as in 'other cases' as provided by the statute." 224 So. 2d at 210. Thus, in accordance with *Tenneco* the chancellor in this case reviewed evidence and determined the cause under the authority of §§ 27-7-73 and 27-13-45. Therefore, this Court must now ascertain whether or not the chancery court arrived at the proper determination.

¶13.    Murphy argues that the chancellor's ruling should be affirmed because § 27-7-23 (c)(3) (Rev. 1991) provides for the application of the Destination Sales Theory to determine those "sales" assignable to Mississippi for purposes of any formula in which a sales factor is included regardless of ownership, title, control or risk of loss.

¶14. This Court has rejected the Destination Sales Theory as a way to account for Mississippi receipts for franchise tax purposes. However, Murphy indicates that § 27-7-23(c)(3) (Rev. 1991) provides for application of the Destination Sales Theory to determine whether sales are assignable to Mississippi for franchise tax purposes. This conclusion is inconsistent with *Mississippi State Tax Comm'n v. Chevron U.S.A., Inc.*, 650 So. 2d 1353 (Miss. 1995).

¶15. In *Chevron*, this Court noted that the destination theory was specifically rejected by this Court as a way to account for Mississippi receipts for franchise tax purposes. *Id.* at 1357. This Court specifically stated that "franchise tax is imposed on a corporation based on what is actually being done in Mississippi, regardless of the ultimate destination of the product." *Id.* (citing *Southern Package Corp v. State Tax Comm'n*, 195 Miss. 864, 15 So. 2d 436, 437-38 (1944)). In *Chevron*, Chevron claimed that its records were maintained on a destination and origin basis and that it only attributed a sale as being in Mississippi when the customer physically came to the state or the product was consumed in the state. *Id.* at 1359. However, this Court specifically stated that "this does not reflect the volume of business that Chevron conducts within this State, *the basis on which franchise tax liability is now determined*." *Id.* (emphasis added). The same version of § 27-7-23 was in effect when *Chevron* was decided. Moreover, in accordance *with Chevron*, a franchise tax is measured by the volume of business conducted in Mississippi and *not* the ultimate destination.

**II.**

7

¶16.    Furthermore, Murphy contends that Mississippi's claiming these sales on the basis that the sales are not being claimed by another state violates the commerce clause.   On the other hand, the Commission argues that these sales should be treated as Mississippi sales unless Murphy can show the sales are being reported or assigned to another state.   Murphy provides that Mississippi cannot assign these sales unless the taxing statute so provides and such assignment does not offend the due process and the commerce clauses.   First of all, Mississippi can assign these sales because the franchise tax statute does allow Mississippi to tax these activities.   Furthermore, the taxing statute also provides that Mississippi can assign these sales if "the taxpayer is not taxable in the state of the purchaser."  Miss. Code Ann. § 27-7-23 (c)(3)(ii)(b) (Rev. 1991).   Murphy had no knowledge of the whereabouts of the product or its ultimate destination and was not taxed by the state of the purchaser.   Therefore, Mississippi can tax these sales unless such a tax would violate the commerce clause.

¶17.    Murphy concludes that treating the sales as Mississippi sales under the facts of this case would violate the commerce clause and due process clauses under the four-part **Complete Auto** test as provided for in **Marx v. Truck Renting & Leasing Ass'n, Inc.**, 520 So. 2d 1333, 1342-43 (Miss. 1987) (citing **Complete Auto Transit Inc. v.  Brady**, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d (1977)).   This test requires that "(1) [t]he tax must be applied to an activity with a substantial nexus with the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; (4) the tax must be fairly related to services provided by the taxing state.  **Marx**, 520 So. 2d at 1342-43.   However, Murphy only argues that the first and fourth prongs of the test are violated.

1.  *Nexus with the Taxing State*

8

¶18.    Murphy contends that the tax does not have a substantial nexus with Mississippi.    As this Court has stated, the mere fact that income is generated outside this state will not prevent taxation of that income, for purposes of the commerce clause challenge, so long as there is a nexus between the tax and the transaction within the taxing state. *Id* at 1343.

¶19.    In order to satisfy the minimal connection prong of the four-prong test, the corporation being taxed must avail itself of "the substantial privilege of carrying on business within the state." *Miss. State Tax Comm'n v. Bates*, 567 So. 2d 190, 193 (Miss. 1990) (citing *Marx v. Truck Renting & Leasing Ass'n, Inc.*, 520 So. 2d 1333, 1342 (Miss. 1987)).    The taxing power exerted by the state must bear a fiscal relation to protections, opportunities, and benefits given by the state so that the state may properly ask return for what it has given the taxpayer. *Id.*    In determining whether the first prong is met, the inquiry must focus on the underlying activities conducted within the state and in order for the taxpayer to avoid such taxation it must show the income was derived from activities unrelated to activities conducted within the taxing state. *Id.*

¶20.    Again, franchise taxation is based on what is actually being done or carried on in Mississippi.    In addition to being *merely* stored in Mississippi for periods not exceeding five days, the product was metered when it was stored in Collins, Mississippi, which was the basis for Murphy to bill its purchasers for the sale.    In addition to being metered and billed in Mississippi, the transfer of title, ownership and control of the product also occurred in Collins, Mississippi.    Once metered and billed in Mississippi, the purchasers took absolute control of the product, and Murphy had no knowledge of the whereabouts of the product or its ultimate destination.    Therefore, Murphy did not merely store the fuel in Mississippi, and there

9

is a substantial nexus to warrant franchise taxation. A franchise tax is measured by what is actually being done or carried on in Mississippi, which is exactly what occurred when Murphy stored, metered, billed and transferred title and ownership of the petroleum products. Therefore, there is a substantial nexus between the tax and the transaction within Mississippi.

### 2. Tax Fairly Apportioned

¶21. The party opposing the tax must show by clear and cogent evidence that the tax is out of proportion to the activity which takes place in Mississippi. *Tenn. Gas Pipeline Co. v. Marx*, 594 So. 2d 615, 618 (Miss. 1992); *Marx v. Truck Renting & Leasing Ass'n, Inc.*, 520 So. 2d at 1344. Murphy does not specifically address the second prong of the test; nevertheless, we will address this issue. Murphy merely asserts that an inclusion of the sales at issue into the franchise tax apportionment formula results in an inconsistent tax assessment by the Commission. Murphy suggests that the Commission's determination of the sales at issue as "Mississippi Receipts" leads to a less than equitable tax level after calculation of the franchise tax apportionment formula. Murphy infers that due to the Commission's designation of these sales as "Mississippi Receipts", and the subsequent inclusion of these sales in the numerator of the franchise tax formula, results in an improper tax franchise.

¶22. As previously determined under the first prong a franchise tax is measured by what is actually being done or carried on in Mississippi, which is exactly what occurred when Murphy stored, metered, billed and transferred title and ownership of the petroleum products. Therefore, it is proper to include these sales in the franchise tax apportionment formula because the franchise tax statute does allow Mississippi to tax these activities. Further,

10

Murphy does not present any clear and cogent evidence to the contrary. Thus, the Commission fairly apportioned the franchise tax under the apportionment formula.

### 3. No Discrimination Against Interstate Commerce

¶23.     Murphy does not address the  third prong of the test, nevertheless we must consider this element.   In **Marx**, this Court decreed that "[i]f the tax causes so called 'double taxation' so that an interstate taxpayer is subjected to two taxes on the same income that an intrastate taxpayer would pay one tax on, then the tax is said to be discriminatory." **Marx v. Truck Renting & Leasing Ass'n Inc.,** 520 So.2d at 1345, citing  **Armco Inc. v. Hardesty**, 467 U.S. 638, 104 S. Ct. 2620, 81 L. Ed. 2d 540 (1984).   Further, "[a] state tax that favors an in-state business over an out-of-state business for the sole reason of location is prohibited by the commerce clause." **Tenn. Gas Pipeline**, 594 So. 2d at 618.   Murphy is not subject to double taxation as a result of the franchise tax in this case, nor does the franchise tax imposed discriminate against interstate commerce in favor of intrastate commerce.     Therefore, the franchise tax is not discriminatory, and this prong of the test is satisfied.

### 4. Tax is Fairly Related to Services of the State

¶24.     The final prong of the test determines whether the activity which generated the income is related to the activities conducted in Mississippi.   Additionally, "the fourth prong of the **Complete Auto** test thus focuses on the wide range of benefits provided to the taxpayer, not just the precise activity connected to the interstate activity at issue." **Goldberg v. Sweet**, 488 U.S. 252, 267, 109 S. Ct. 582, 592, 102 L. Ed. 2d 607 (1989).   In the present case, all of the activities mentioned above occurred in Mississippi and relate to the particular sales in question.     Moreover, Murphy receives police and fire protection, use of transit in Mississippi

11

and other advantages of civilized society. ***D.H. Holmes Co. v. McNamara***, 486 U.S. 24, 32, 108 S. Ct. 1619, 1624, 100 L. Ed. 2d 21 (1988). "Furthermore, [Murphy] is currently availing itself of the use of our court system." ***Tenn. Gas Pipeline***, 594 So. 2d at 619. "It follows that [Murphy] should pay its share of the tax burden in Mississippi although it is involved in interstate commerce." ***Tenn. Gas Pipeline***, 594 So. 2d at 619, citing ***American Trucking Ass'ns, Inc. v. Scheiner***, 483 U.S. 266, 296, 107 S. Ct. 2829, 2846, 97 L. Ed. 2d 226, 251 (1987).

¶25. Consequently, there is a fair relationship between the services provided by Mississippi in allowing the sales to occur and the value of those sales. Hence the fourth and final prong of the test is satisfied.

¶26. The franchise tax imposed by the Commission has a sufficient nexus with Mississippi, is fairly apportioned under the apportionment formula, does not discriminate against interstate commerce in favor of intrastate commerce, and is fairly related to services provided by Mississippi. Therefore, contrary to Murphy's contention, the franchise tax imposed by the Commission does not violate of the commerce or due process clauses of the United States Constitution.

## CONCLUSION

¶27. For these reasons, we reverse the judgment of the chancery court, and we render judgment reinstating and affirming the order of the Mississippi State Tax Commission.

¶28. **REVERSED AND RENDERED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

12