# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00325-SCT

*MISSISSIPPI STATE TAX COMMISSION*

*v.*

*MURPHY OIL USA, INC.*

## ON MOTION FOR REHEARING

DATE OF JUDGMENT:                   01/21/2003
TRIAL JUDGE:                        HON. J. LARRY BUFFINGTON
COURT FROM WHICH APPEALED:          SIMPSON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:            GARY WOOD STRINGER
                                    SAMUEL T. POLK
ATTORNEYS FOR APPELLEE:             CHARLES CLARK
                                    JAMIE G. HOUSTON, III
                                    W. TERRELL STUBBS
NATURE OF THE CASE:                 CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                        REVERSED AND RENDERED - 06/15/2006
MOTION FOR REHEARING FILED:         11/10/2005
MANDATE ISSUED:

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    The motion for rehearing is denied. The prior opinion is withdrawn, and this opinion is substituted therefor.

¶2.    In 1999, the Mississippi State Tax Commission ("Commission") examined the Mississippi Combined Income and Franchise tax returns of Murphy Oil U.S.A., Inc. ("Murphy") for the following tax years: 1995, 1996, and 1997. As a result of this examination, on September 30, 1999, the Commission assessed additional franchise taxes and interest against Murphy in the amount of $87,952.00. After two internal agency appeals,

Murphy sought judicial review in the Chancery Court of Simpson County pursuant to Miss. Code Ann. § 27-13-45 (Rev. 2003). On January 17, 2003, the chancellor ordered that the additional franchise tax assessment made by the Commission "shall not be allowed." The Commission filed a timely appeal to this Court.

¶3. In addition to the destination theory, this Court will look at the entirety of events in each unique instance for the purpose of determining franchise taxes. We find that the franchise tax imposed does not violate the commerce or due process clauses of the United States Constitution. Thus, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶4. Murphy is a Delaware corporation with its principal place of business in El Dorado, Arkansas, and is authorized to do business in the State of Mississippi. Murphy is in the business of refining and marketing petroleum products for wholesale and retail purposes. As part of its operations, Murphy owned and operated a refinery in Meraux, Louisiana; refined products produced at this refinery were shipped through tank trunks, by barge or through a pipeline known as the Collins Pipeline located in Collins, Mississippi. In addition to refining and selling products at wholesale, Murphy also owned and operated service stations in Mississippi to sell products at retail.

¶5. The Collins Pipeline starts at Meraux, Louisiana, and terminates at the T&M terminal located in Collins, Mississippi. From 1995 to the present, a corporation by the name of Collins Pipeline Company has owned Collins Pipeline. During the tax years in issue, Collins

2

Pipeline Company was owned by Murphy and Chalmette Refining, Inc. The facility at which this pipeline terminates, T&M Terminal, is owned by T&M Terminal Company. During the years in question T&M Terminal Company was also owned by Murphy and Chalmette.

¶6.　　The T&M terminal at which the Collins Pipeline terminates consists of ten tanks, referred to as "breakout tankage" where products shipped on the pipeline can be stored. Additionally, at the T&M terminal, there are pipes, valves and other equipment that connect that facility to both Colonial Pipeline and Plantation Pipeline to allow for the injection of product from the T&M terminal into either of these pipelines. Colonial Pipeline begins at Pasadena, Texas, and terminates in New Jersey, with numerous terminals and facilities along its pipeline system in Texas, Louisiana, Mississippi, Alabama, Tennessee, Georgia, South Carolina, North Carolina, Virginia, Maryland, Delaware, and New Jersey. Plantation Pipeline begins in Baton Rouge, Louisiana, and terminates in Washington, D.C., with numerous terminals and facilities along its pipelines in Louisiana, Mississippi, Alabama, Tennessee, Georgia, South Carolina, North Carolina, Virginia, and the District of Columbia.

¶7.　　The sales by Murphy, which the auditor reclassified as Mississippi sales resulting in the assessment of additional franchise taxes, were sales made by Murphy where title and control of the property sold was transferred to the purchaser at Collins, Mississippi. The amount of these sales for each of the tax years in issue is as follows: (1) 1995 – $156,826,131.00; (2) 1996 – $199,285,823.00; and (3) 1997 – $155,652,973.00. The negotiations of these sales began with traders in El Dorado, Arkansas, who determined what

3

product being manufactured in Meraux was available for sale. Based on a review of the market conditions, a trader would determine which pipeline would give Murphy the greatest return on its sale. After this was determined, the trader would attempt to market the product to potential buyers who were willing to purchase the product using the pipeline selected.

¶8. The product to be sold belonged to Murphy while it was being shipped from Meraux to Collins on the Collins Pipeline and while it was in the breakout tankage at the T&M terminal. The product would remain in the breakout tankage at T&M terminal for a few hours up to several days. The length of time the product was stored in Collins, Mississippi depended on quantity and product cycle requirements of the pipelines. Many times, Murphy would already have a buyer for the product before it left the refinery in Meraux, Louisiana. At other times, Murphy would not have a buyer for the product until after the product had left the refinery, and at times, even after it had been placed in the breakout tankage at the T&M terminal. Under the terms of the sales at issue, title, possession and control of the product passed from Murphy to the purchaser when the product was injected from the T&M terminal into either the Colonial Pipeline or the Plantation Pipeline in Collins, Mississippi. Title actually passed as the product was being metered and injected into the pipelines. This metering of the injection of the product into Colonial or Plantation Pipeline was used by Murphy to bill its purchaser for payment. Upon receipt of the report of the metering that took place in Collins, Mississippi, Murphy would bill its customers who would then pay Murphy by wire transfer.

4

¶9. After injection into Colonial or Plantation Pipelines, Murphy had no knowledge of the whereabouts of the product or where the product was ultimately offloaded. Murphy contends these sales are not Mississippi sales for determining its Mississippi sales factor. Furthermore, Murphy had not included these sales as sales in any other state in determining the sales factors.

¶10. The Commission examined the Mississippi Combined Income and Franchise Tax Returns of Murphy for tax years 1995, 1996 and 1997. As a result of this examination, an assessment of additional Mississippi franchise tax and interest was issued against Murphy on September 30, 1999. Murphy, pursuant to Miss. Code Ann. § 27-13-43, appealed this assessment to the Board of Review of the Commission for a hearing. After proper notice and a hearing before the Board of Review on March 9, 2000, the Board entered its order affirming the assessment in the original amount of $87,952.00. Following this decision by the Board of Review, Murphy appealed to the full Mississippi State Tax Commission for a hearing on the decision of the Board of Review to affirm the tax in question. A hearing before the full Commission was held on June 21, 2000. On December 6, 2000, the full Commission affirmed the assessment. Murphy was ordered to pay to the Commission the entire assessment of $87,952.00 plus interest.

¶11. Following the decision of the full Commission, Murphy timely filed a petition for judicial review in the Chancery Court of Simpson County. After discovery and trial, the chancellor signed a final judgment wherein he ordered "that the additional assessments made

5

by the Mississippi State Tax Commission shall not be allowed and that the sales for the years in question shall be those that were, in fact, downloaded in the state of Mississippi for final destination in the state of Mississippi." The Commission timely filed its appeal with this Court.

## ISSUES

I.    **Whether the Destination Sales Theory Should Be Applied for Franchise Tax Purposes.**

II.   **Whether the Franchise Tax Violates the Commerce or Due Process Clauses of the United States Constitution.**

## ANALYSIS

### I.

¶12.    The chancery court reviewed this matter in a full evidentiary hearing, complete with a full record. In *Tenneco, Inc. v. Barr*, 224 So. 2d 208, 211 (Miss. 1969), this Court held that "[i]t is manifest, from the express provisions of [Mississippi Code Annotated 1942] § 9220-31, that the Legislature has made it the public policy of this state to provide a full evidentiary judicial hearing in cases of the character now under consideration." Section 9220-31 is the predecessor to current Miss. Code Ann. §§ 27-7-73 (income tax–judicial review) and 27-13-45 (franchise tax–judicial review). In *Tenneco*, as well as in the present matter, "the chancellor heard evidence and determined the cause as in 'other cases' as

6

provided by the statute." 224 So. 2d at 210. Thus, in accordance with *Tenneco*, the chancellor in this case reviewed evidence and determined the case under the authority of §§ 27-7-73 and 27-13-45. This Court must now ascertain whether the chancery court arrived at the proper determination.

¶13. Murphy argues the chancellor's ruling should be affirmed because the pre-1996 version of Miss. Code Ann. Section 27-7-23(c)(3)(A)(I) provides for the application of the Destination Sales Theory to determine those "sales" assignable to Mississippi for purposes of any formula in which a sales factor is included regardless of ownership, title, control or risk of loss. The pre-1996 version of Section 27-7-23(c)(3)(A), in its entirety provides:

> (3) Except as provided in Sections 27-2-24, 27-7-24.1, 27-2-24.3, 27-2-24.5 and 27-2-24.7, Mississippi Code of 1972, for the purpose of any formula which includes a sales factor, sales shall be assigned to Mississippi based on the following conditions:
> > (A) Sales of tangible personal property, including interest, carrying charges, deferred charges and delivery charges incident to such sales, are in this state if:
> > > (I) The property is delivered or shipped to a purchaser, or to the designee of the purchaser, other than the United States Government, within this state regardless of f.o.b. point or other conditions of the sale; or
> > > (ii) The property is shipped from an office, store, warehouse, factory, or other place of storage in this state, and (a) the purchaser is the United States Government, or (b) the taxpayer is not taxable in the state of the purchaser.

¶14. Murphy contends § 27-7-23(c)(3)(A)(I) (Rev. 1996) provides for application of the destination sales theory to determine whether sales are assignable to Mississippi for franchise tax purposes; however, the language of Section 27-2-23(c)(3)(A)(ii) clearly and plainly

7

provides for an additional method, other than the destination of the product, for determining a formula's sales factor.

¶15.    In *Mississippi State Tax Comm'n v. Chevron U.S.A., Inc.*, 650 So. 2d 1353 (Miss. 1995), this Court stated:

> Mississippi follows a destination sales theory which means that the sale is allocated to the state where the product is delivered to the customer. However, this theory does not identify what is actually being done in Mississippi, rather, it is a method by which interstate sales are apportioned to the various states where the corporate taxpayer does business.
>
> The destination sales theory was specifically rejected by this Court as a way to account for Mississippi receipts for franchise tax purposes. *See Southern Package Corp. v. State Tax Comm'n*, 195 Miss. 864, 15 So. 2d 436 (1944). . . .   This Court recognized that franchise tax is imposed on a corporation based on what is actually being done in Mississippi, regardless of the ultimate destination of the product. *Id*. 15 So. 2d at 437-38.

650 So. 2d at 1357.  For the most part *Chevron* correctly states the applicable law, however a complete rejection of the destination sales theory is a somewhat broad interpretation of this Court's holding in *Southern Package*.  *Southern Package* expressly states: "the franchise tax is for the corporate privilege or franchise of doing in this state what was done and is being done here regardless of the ultimate destination of the products or by what legalistic means they may get there."  *Southern Package*, 195 Miss. at 874, 15 So. 2d at 438.  Thus, *Southern Package* does not specifically reject the destination theory for franchise tax purposes, as *Chevron* states.   Therefore, to quell future concerns, we recognize the incongruity between *Chevron* and *Southern Package*.  Although, *Chevron* and *Southern*

8

*Package* are factually distinguishable from the case at bar, the destination theory theme in each case vastly outweighs any factual dissimilarities among the cases.

¶16.   Notwithstanding the over-broad nature of *Chevron*, today we acknowledge that because a franchise tax is based on what is being done in Mississippi, the destination theory will never be used as the sole method of determining franchise taxes, but a product's destination may be used as a factor for franchise tax assessment.  It is apparent to this Court that the destination of a product is only one facet of measuring what is being done in the state (the true measure of determining franchise taxes).  Hence, we now look at the entirety of events in each unique instance to determine whether a Mississippi sale is present for franchise tax purposes.

¶17.   Additionally, the problem in *Southern Package* was the package corporation was attempting to manipulate its operations to reduce its amount of franchise tax liability.  Here, Murphy is apparently attempting the same but on a smaller, less obvious scale.  In this case, Murphy shipped their unsold product to the storage tanks at Collins, Mississippi, where the product was held for a number of days and eventually sold from Murphy's office in Arkansas to a buyer in an entirely different state.  Moreover, Murphy did not consider these transactions as sales in any state, despite recording them as Mississippi sales in its accounting records.  Thus, as the Commission insists, Murphy has effectively created "nowhere sales."

¶18.   A "nowhere sale" is obviously what the language of § 27-2-23(c)(3)(A)(ii) was designed to preclude. See supra.  Pursuant to § 27-2-23(c)(3)(A)(ii), in the case at bar, the

9

product was shipped from a "place of storage in this state" (the breakout tankage), and Murphy was not taxable in the state of the purchaser. Therefore, in accordance with the statute, the product should be thrown back to Mississippi and treated as sales in this state for the purpose of calculating an applicable formula for calculating franchise taxes.

¶19. Further when the pertinent facts of this case are considered in the overall scheme of the activity being conducted in this state, we find franchise taxes should be assessed. A bird's eye view of pertinent facts leads to such a conclusion; these facts include:

1.     Murphy accounts for the sales at issue by using a Mississippi state code;

2.     The product at issue was unsold when it was placed into the breakout tank storage;

3.     Murphy did not apportion the sales to any state, effectively creating a nowhere sale;

4.     The product was stored and metered in Collins, Mississippi;

5.     Transfer of title, ownership and control occurred in Mississippi;

6.     Murphy's product received public protection, among other advantages, while being stored in Mississippi.

¶20. This Court does however point out the activity in the case at bar is just inside the franchise tax's threshold; absent one of the elements set forth in the facts of this case the results could be different. Nevertheless, after a collective review of the foregoing facts we find the chancellor's judgment was erroneous.

10

## II.

¶21.   Murphy also contends that Mississippi's claiming these sales on the basis that the sales are not being claimed by another state violates the commerce clause.  On the other hand, the Commission argues that these sales should be treated as Mississippi sales unless Murphy can show the sales are being reported or assigned to another state.  Murphy contends that Mississippi cannot assign these sales unless the taxing statute so provides and such assignment does not offend the due process and commerce clauses.  First, Mississippi can assign these sales because the franchise tax statute does allow Mississippi to tax these activities.  Furthermore, the taxing statute also provides that Mississippi can assign these sales if "the taxpayer is not taxable in the state of the purchaser."  Miss. Code Ann. § 27-7-23 (c)(3)(ii)(b) (Rev. 1991).  Murphy had no knowledge of the whereabouts of the product or its ultimate destination and was not taxed by the states of the purchasers.  Therefore, Mississippi can tax these sales unless such a tax would violate the commerce clause.

¶22.   Murphy concludes that treating the sales as Mississippi sales under the facts of this case would violate the commerce clause and due process clause under the four-part *Complete Auto* test as provided in *Marx v. Truck Renting & Leasing Ass'n, Inc.*, 520 So. 2d 1333, 1342-43 (Miss. 1987) (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d (1977)).  This test requires that "(1) [t]he tax must be applied to an activity with a substantial nexus with the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; (4) the tax must be fairly

11

related to services provided by the taxing state." *Marx*, 520 So. 2d at 1342-43. However, Murphy only argues that the first and fourth prongs of the test are violated.

1. *Nexus with the Taxing State*

¶23. Murphy contends the tax does not have a substantial nexus with Mississippi. As this Court has stated, the mere fact that income is generated outside this state will not prevent taxation of that income, for purposes of a commerce clause challenge, so long as there is a nexus between the tax and the transaction within the taxing state. *Id*. at 1343.

¶24. In order to satisfy the minimal connection prong of the four-prong test, the corporation being taxed must avail itself of "the substantial privilege of carrying on business within the state." *Miss. State Tax Comm'n v. Bates*, 567 So. 2d 190, 193 (Miss. 1990) (citing *Marx*, 520 So. 2d at 1342). The taxing power exerted by the state must bear a fiscal relation to protections, opportunities, and benefits given by the state so that the state may properly ask for compensation for what it has given the taxpayer. *Bates*, 567 So. 2d at 193. In determining whether the first prong is met, the inquiry must focus on the underlying activities conducted within the state, and in order for the taxpayer to avoid such taxation it must show the income was derived from activities unrelated to activities conducted within the taxing state. *Id.*

¶25. Again, franchise taxation is based on what is actually being done or carried on in Mississippi. In addition to being *merely* stored in Mississippi for periods not exceeding five days, the product was metered when it was stored in Collins, Mississippi, which was the basis

12

for Murphy to bill its purchasers for the sale. In addition to being metered and billed in Mississippi, the transfer of title, ownership and control of the product also occurred in Collins, Mississippi. Once metered and billed in Mississippi, the purchasers took absolute control of the product, and Murphy had no knowledge of the whereabouts of the product or its ultimate destination. A franchise tax is measured by what is actually being done or carried on in Mississippi, which is exactly what occurred when Murphy stored, metered, billed and transferred title and ownership of the petroleum products. Murphy did not merely store the fuel in Mississippi. Therefore, there is a substantial nexus between the tax and the transaction within Mississippi.

### 2. Tax Fairly Apportioned

¶26. The party opposing the tax must show by clear and cogent evidence that the tax is out of proportion to the activity which takes place in Mississippi. *Tenn. Gas Pipeline Co. v. Marx*, 594 So. 2d 615, 618 (Miss. 1992); *Marx*, 520 So. 2d at 1344. Murphy does not specifically address the second prong of the test; nevertheless, we will address this issue. Murphy merely asserts that inclusion of the sales at issue into the franchise tax apportionment formula results in an inconsistent tax assessment by the Commission. Murphy suggests the Commission's determination of the sales at issue as "Mississippi Receipts" leads to a less than equitable tax level after calculation of the franchise tax apportionment formula. Murphy implies that the Commission's designation of these sales as "Mississippi Receipts", and the

13

subsequent inclusion of these sales in the numerator of the franchise tax formula, results in an improper franchise tax.

¶27.   As previously determined under the first prong, a franchise tax is measured by what is actually being done or carried on in Mississippi; here, Murphy stored, metered, billed and transferred title and ownership of the petroleum products.  Therefore, it is proper to include these sales in the franchise tax apportionment formula because the franchise tax statute does allow Mississippi to tax these activities.  Further, Murphy does not present any clear and cogent evidence to the contrary.  Thus, the Commission fairly apportioned the franchise tax under the apportionment formula.

### 3.  No Discrimination Against Interstate Commerce

¶28.   Murphy does not address the  third prong of the test, nevertheless we must consider this element.  In *Marx*, this Court decreed that "[i]f the tax causes so called 'double taxation' so that an interstate taxpayer is subjected to two taxes on the same income that an intrastate taxpayer would pay one tax on, then the tax is said to be discriminatory." *Marx*, 520 So.2d at 1345 (citing  *Armco Inc. v. Hardesty*, 467 U.S. 638, 104 S. Ct. 2620, 81 L. Ed. 2d 540 (1984)).  Further, "[a] state tax that favors an in-state business over an out-of-state business for the sole reason of location is prohibited by the commerce clause." *Tenn. Gas Pipeline*, 594 So. 2d at 618.  Murphy is not subject to double taxation as a result of the franchise tax in this case, nor does the franchise tax imposed discriminate against interstate commerce in

favor of intrastate commerce. Therefore, the franchise tax is not discriminatory, and this prong of the test is satisfied.

    4. *Tax is Fairly Related to Services of the State*

¶29.    The final prong of the test determines whether the activity which generated the income is related to the activities conducted in Mississippi. Additionally, "the fourth prong of the ***Complete Auto*** test focuses on the wide range of benefits provided to the taxpayer, not just the precise activity connected to the interstate activity at issue." ***Goldberg v. Sweet***, 488 U.S. 252, 267, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989). In the present case, all of the activities mentioned above occurred in Mississippi and relate to the particular sales in question. Moreover, Murphy receives police and fire protection, use of transit in Mississippi and other advantages of civilized society. *See* ***D.H. Holmes Co., Ltd. v. McNamara***, 486 U.S. 24, 32, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988). "Furthermore, [Murphy] is currently availing itself of the use of our court system." ***Tenn. Gas Pipeline***, 594 So. 2d at 619. "It follows that [Murphy] should pay its share of the tax burden in Mississippi although it is involved in interstate commerce." ***Id***. (citing ***American Trucking Ass'ns, Inc. v. Scheiner***, 483 U.S. 266, 296, 107 S. Ct. 2829, 97 L. Ed. 2d 226 (1987)). Consequently, there is a fair relationship between the services provided by Mississippi in allowing the sales to occur and the value of those sales. Hence the fourth and final prong of the test is satisfied.

¶30.    The franchise tax imposed by the Commission has a sufficient nexus with Mississippi; is fairly apportioned under the apportionment formula; does not discriminate against

15

interstate commerce in favor of intrastate commerce; and is fairly related to services provided by Mississippi. Therefore, contrary to Murphy's contention, the franchise tax imposed by the Commission does not violate the commerce or due process clauses of the United States Constitution.

## CONCLUSION

¶31. For these reasons, we reverse the judgment of the chancery court, and we render judgment reinstating and affirming the order of the Mississippi State Tax Commission.

¶32. **REVERSED AND RENDERED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**